STATE of Utah, Plaintiff and Respondent,

v.

Arthur Lee ISAACSON, Defendant and Appellant.

No. 19669.

Supreme Court of Utah.

July 29, 1985.

David L. Mower, Richfield, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Dave B. Thompson, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant Arthur Lee Isaacson was charged with aggravated burglary, a first

degree felony. U.C.A., 1953, § 76-6-203(1)(c). Following a nonjury trial, defendant was found guilty as charged. The trial judge sentenced defendant for a second degree felony under the authority of U.C.A., 1953, § 76-3-402(1). Defendant appeals, contending that there was insufficient evidence of his intent to commit burglary to convict him of the crime. We affirm.

Conflicting evidence was presented at trial. Although defendant's version of the facts, if believed, would negate the required intent necessary to find defendant guilty of burglary, on conflicting evidence the Court is obliged to accept that version of the facts which supports the verdict.[1]

The testimony presented at trial is summarized as follows: In the early morning hours of August 10, 1983, Alice Whitehead, manager of the Shaheen Motel in Salina, Utah, was awakened by a phone call from a motel guest, who complained of a disturbance. Following the call, Whitehead looked out her bedroom window and saw two individuals in the motel breezeway, four or five feet from the window, trying to open a small storeroom door. One individual was using a knife to pick open the lock. Whitehead called the police. Whitehead testified that the two windows to the bedroom facing the breezeway were closed, that a screen found in the breezeway by the police officers had been on one window earlier, and that her seventeen-year-old daughter had been in the room sleeping at the time this took place.

Officer Gary Keller of the Salina City Police Department testified that he responded to a call from the Shaheen Motel. When he arrived, he parked his car and went to the breezeway. As Keller approached, he saw defendant standing in front of the window to the manager's apartment. Defendant's hands and arms were inside the open window, and the curtains were over his head. Defendant's feet were on the ground. Keller also saw defendant's companion, Terry Lee Jacobsen,

in front of the storage room door, with his hand on the top hinge pin of the door. Officer Keller asked the pair what they were doing there. Defendant backed out of the window and turned to face Keller, an open pocketknife in his left hand held at waist level. Both men were ordered to the ground, responded promptly, and were handcuffed and arrested. In the patrol car, defendant's folded pocketknife was removed from the front pocket of his pants. Keller testified that both men stated in the patrol car on the way to jail that they had done nothing and were just looking for a place to sleep. Both men were cited for criminal trespass.[2]

Officer Keller testified that when defendant's head was in the window, the drapes were closed and the room was unlit. However, after defendant and Jacobsen were handcuffed, Keller pulled the curtains out and looked inside the window. He saw Whitehead's daughter, awake and out of bed. Keller also testified that, because of the mercury vapor lights in the breezeway, it was easy to see into the room.

Officer Jim Reynolds, also a Salina City police officer, testified that he responded to the motel call with Officer Keller. He saw defendant "standing in the window" and walked up as defendant turned away from the window and lay down at Keller's order. Reynolds said that he could see in the window at that time, that the daughter was asleep in the bed, and that there was no difficulty seeing into the room.

Defendant took the stand in his own defense at trial. His companion, Terry Jacobsen, also took the stand and testified. The testimony from each was substantially the same. Defendant and Jacobsen had been fired from their jobs in Richfield that day and had begun hitchhiking to Salt Lake City. The first ride took them to Salina, where the two went into a bar and began drinking beer. After running out of money, defendant and Jacobsen again began hitchhiking. Three men in a car picked

---

1. *State v. Howell,* Utah, 649 P.2d 91, 93 (1982).

2. Jacobsen pleaded guilty to criminal trespass. U.C.A., 1953, § 76-6-206.

defendant and Jacobsen up, drove them outside of town, dropped them off, and left with their belongings. Defendant and Jacobsen, lightly clad and admittedly drunk, tried to sleep in the sagebrush outside of town, but the cold and the mosquitoes made that impossible. After several hours, the pair walked to the closest building, the Shaheen Motel, and tried a few doorknobs to see if they could get into a room to sleep. They then knocked on a room door and asked for a blanket. After being told to go away,[3] the pair went to the breezeway, where defendant, still looking for a warm place to sleep, unsuccessfully tried to pick a lock on a storeroom door with his pocketknife. Both men then sat down near the ice machine, which was venting warm air. Defendant began to clean his fingernails with his pocketknife. A few minutes later, defendant noticed the window in the breezeway, walked over to it, and said, "Is anyone in there?" The drapes were closed, and the room was dark. About that time, the officers arrived. As defendant lay down on the ground at the officer's order, defendant folded his knife, cutting his finger in the process, and put the knife in his pocket.

Defendant and Jacobsen both denied that defendant had had his head, hands, or arms inside the window, that either of them had removed the window screen, or that either of them had had any intent of committing theft or assault. Both testified that their only intent was to find a place to sleep, to get warm, or to obtain a blanket or some help. Defendant did admit that if he had found a blanket, he would have taken it.[4]

Bobbie Cowley testified regarding the dimensions of the window and its relative position on the wall in an attempt to prove that defendant could not have had his head and arms inside the window while his feet remained on the ground. The distance from the floor to the bottom of the window was four feet three inches. Only one-half of the three-foot-wide window opened. The side that opened measured one foot four inches in width. The window was inset from the wall face five inches and had a seven-inch lip. Defendant is five feet five inches tall.

■ Defendant's main point on appeal is that the evidence presented at trial was insufficient to prove that defendant intended to commit burglary. In reviewing a claim of insufficient evidence, this Court must view the evidence in the light most favorable to the verdict.[5] A verdict will be overturned only when the evidence is so lacking and insubstantial that a reasonable person could not have reached that verdict beyond a reasonable doubt.[6] This standard of review is the same whether the finder of fact is a trial judge or a jury.[7]

■ In order to have convicted defendant of aggravated burglary,[8] the State

---

3. The room's occupants then phoned Whitehead to complain of the disturbance. It is this phone call that awakened her.

4. Upon cross-examination by the prosecutor, Don Brown, defendant testified:
    Q. I suppose it would be accurate to say, Mr. Isaacson, if there had been a blanket and not an occupant inside that window, you would have taken the blanket; wouldn't you?
    A. Yes.
    Q. And then you would have gone out and used it to sleep somewhere?
    A. Probably would have stayed there.
   On redirect examination, defendant's counsel elicited this testimony:
    Q. Were you intending to steal anything from that motel?
    A. No, not really, sir.
    Q. But you would have used a blanket if you had of found one; is that right?
    A. Yes, sir.
    Q. Or a room?
    A. Yes, sir.

5. *State v. Tanner,* Utah, 675 P.2d 539, 550 (1983).

6. *Id.*

7. *Id.*

8. U.C.A., 1953, § 76–6–203(1)(c) (1978) provides:
    (1) A person is guilty of aggravated burglary if in attempting, committing, or fleeing from a burglary, the actor or another participant in the crime:
    . . . .
    (c) Is armed with a deadly weapon or possesses or attempts to use any explosive or deadly weapon.

must have presented evidence that would have allowed the trier of fact to find beyond a reasonable doubt that defendant had entered a building with the intent to commit theft or assault while armed with a deadly weapon.

■ The trial judge could reasonably have found that under the circumstances of this case, defendant's opened pocketknife was a deadly weapon.[9] Further, according to Officer Keller's testimony, defendant entered Whitehead's dwelling. "Enter" is defined by U.C.A., 1953, § 76–6–201(4)(a) as "[i]ntrusion of any part of the body...." Defendant's head, hands, and arms intruded through a window into Whitehead's apartment. Therefore, the only remaining question is whether defendant intended to commit theft or assault.

As to intent to commit assault, the evidence is so lacking and insubstantial that a reasonable person could not have concluded that defendant intended to commit that crime beyond a reasonable doubt. There is, however, sufficient evidence on which a reasonable person could have based an inference that defendant intended to commit theft.

■ A person commits theft if he obtains or exercises unauthorized control over the property of another with the purpose to deprive that person of the property. U.C.A., 1953, § 76–6–404. Defendant himself admitted that he intended to take a blanket if he had found one. Thus, the only question remaining is whether defendant had the requisite purpose to deprive Whitehead of the blanket. U.C.A., 1953, § 76–6–401(3) defines "purpose to deprive" as:

[T]o have the conscious object:

(a) To withhold property permanently or for so extended a period or to use under such circumstances that a substantial portion of its economic value, or of the use and benefit thereof, would be lost; or

(b) To restore the property only upon payment of a reward or other compensation; or

(c) To dispose of the property under circumstances that make it unlikely that the owner will recover it.

■ Intent may be inferred from the actions of the defendant or from the surrounding circumstances.[10] While there is clearly evidence that would negate defendant's intent to deprive Whitehead of her property, there was sufficient evidence adduced at trial to support the trial judge's conclusion that defendant had the requisite intent to commit theft. The evidence was not so lacking and insubstantial that a reasonable person could not possibly have determined beyond a reasonable doubt that defendant had the requisite intent to commit the crime.

Thus, while the evidence in this case to support the verdict is less than conclusive, under the standard of review adopted by this Court the verdict of the trial court must be upheld.

Defendant's second contention on appeal is that he is entitled to a reversal of his conviction because the evidence presented by the State failed to exclude all other reasonable hypotheses than defendant's guilt. This contention is without merit.

In *State v. Castonguay*,[11] this Court stated: "[T]he act in itself does not raise the presumption that it was done with the specific intent required to prove the offense. All the circumstances, when taken

---

U.C.A., 1953, § 76–6–202 (1978) provides:
(1) A person is guilty of burglary if he enters or remains unlawfully in a building or any portion of a building with intent to commit a felony or theft or commit an assault on any person.
(2) Burglary is a felony of the third degree unless it was committed in a dwelling, in which event it is a felony of the second degree.

**9.** *See, e.g., State v. Angus,* Utah, 581 P.2d 992, 995 (1978).

**10.** *State v. Murphy,* Utah, 674 P.2d 1220, 1223 (1983); *State v. Brooks,* Utah, 631 P.2d 878, 881 (1981).

**11.** Utah, 663 P.2d 1323 (1983).

together, must admit of no other reasonable hypothesis than that of guilt to warrant conviction."[12]

In *Castonguay*, the defendant was convicted of attempted first degree murder. The conviction was set aside because, while the State proved that defendant fired his rifle, there was neither direct nor circumstantial evidence of the necessary intent to kill anyone.

In the instant case, both direct and circumstantial evidence supported the trial judge's conclusion that defendant intended to commit a theft.[13]

Affirmed.

STEWART, HOWE, DURHAM and ZIMMERMAN, JJ., concur.

---

**12.** *Id.* at 1326.

**13.** *See also State v. Royball,* Utah, 689 P.2d 1338, 1340 (1984).