The STATE of Utah, Plaintiff and Respondent,

v.

Quinn DUMAS, Defendant and Appellant.

No. 20379.

Supreme Court of Utah.

June 30, 1986.

Stephen W. Cook, Midvale, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Sandra L. Sjogren, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant Quinn Dumas appeals from his convictions of attempted murder in the second degree, U.C.A., 1953, §§ 76–5–203(1)(a) (Repl.Vol. 8B, 1978 ed., Supp.1985) (amended 1986), 76–4–101(1) (Repl.Vol. 8B, 1978 ed.); aggravated robbery, U.C.A., 1953, § 76–6–302 (Repl.Vol. 8B, 1978 ed.); and attempted aggravated robbery, *id.*, U.C.A., 1953, § 76–4–101(1) (Repl.Vol. 8B, 1978 ed.). Defendant was tried along with a co-defendant before a jury.

Conflicting testimony was given at trial. The evidence that supports the jury verdict follows. On May 30, 1984, Mark Ellis, age 24, and James Peterson, age 14, were camped along a river near Green River, Utah. Defendant and five others, including co-defendant Gary Hall,[1] were camped nearby. Several of defendant's party approached the Ellis campsite and asked Ellis and Peterson if they wanted to go to defendant's camp to drink. Ellis accepted but returned to his camp soon thereafter. Peterson remained in his sleeping bag. Later, defendant's party returned to Ellis's camp, where the trouble started. Both Ellis and Peterson were beaten with a flashlight and a broken ax handle. Ellis and Peterson were searched and a wallet and checkbook taken from Ellis. Defendant dragged Ellis into the river by means of a belt around Ellis's neck and repeatedly dunked Ellis for five to ten minutes. Ellis was then taken to the center of the camp and beaten again. Peterson later managed to escape, swim down the river, and hike to a trailer whose occupant called the police.

---

1. This Court in *State v. Hall,* 712 P.2d 229 (Utah 1985), affirmed co-defendant Gary Hall's conviction for aggravated robbery and attempted aggravated robbery.

Both Ellis and Peterson sustained multiple wounds during the incident. Ellis required sixty-five stitches in his scalp alone.

Five people were charged with attempted murder, aggravated robbery, aggravated kidnapping (later dropped), aggravated sexual assault (later dropped), and aggravated assault. All five defendants were bound over for trial. Defendant filed a motion for a separate trial, which motion was denied following a hearing. On the morning of trial, two of the defendants pleaded guilty to three third degree felonies, and the case against a third defendant was continued, ultimately resulting in a plea of guilty to a class B misdemeanor. Defendant and Hall were then tried together. Both defendants were found guilty. Defendant was found guilty of attempted second degree murder, aggravated robbery, and attempted aggravated robbery. Hall was found guilty of aggravated robbery and attempted aggravated robbery.

■ Defendant's first point on appeal is that the trial court's denial of defendant's motion to sever his trial from that of his co-defendant, Gary Hall, constituted an abuse of discretion. This contention has no merit. As was the case in *State v. Hall*,[2] defendant has failed to show any prejudice from the failure to sever. The evidence introduced at the trial was largely applicable to both defendants.[3] Furthermore, the criminal acts by both defendants took place at the same location during the same period of time.[4] Moreover, defendants did not rely on inconsistent defenses.[5] Additionally, the jury instructions adequately protected both defendants' rights; both defendants were named in the instructions. Further, several instructions made it clear that the jury could find the co-defendants guilty or not guilty of different crimes.[6] Finally, separate verdict forms were provided to the jury not only for each defendant, but for each defendant for each crime.[7] The jury was thus adequately advised that each defendant's guilt should be considered separately. In fact, it is clear that the jurors understood that they should consider each defendant's guilt separately since defendant was found guilty of attempted murder while Hall was acquitted on that charge.

Defendant's second point on appeal is that there was insufficient evidence before the jury to support the verdicts of guilt. In reviewing a claim of insufficiency of the evidence, this Court must view the evidence in the light most favorable to the jury verdict.[8] "A verdict will be overturned only when the evidence is so lacking and insubstantial that a reasonable person could not have reached that verdict beyond a reasonable doubt."[9]

■ In order to convict defendant of attempted murder under U.C.A., 1953, § 76–5–203(1)(a) (Repl.Vol. 8B, 1982 ed., Supp. 1985), the State must have adduced evidence that would have allowed the jury to find beyond a reasonable doubt that defendant intentionally or knowingly attempted to cause Mark Ellis's death. Intent is an element that often can be proved only by means of circumstantial evidence.[10] In this case, there was certainly evidence adduced from which a jury could have in-

2. 712 P.2d at 230.

3. *See* Utah R.Crim.P. 9 (U.C.A., 1953, § 77–35–9 (Repl.Vol. 8C, 1982 ed.)).

4. *See* U.C.A., 1953, § 76–1–401 (Repl.Vol. 8B, 1982 ed.).

5. *See State v. Collins*, 612 P.2d 775, 777 (Utah 1980).

6. For example, instruction No. 15 stated in pertinent part: "In the event you find *either* of the defendants not guilty of ATTEMPTED AGGRAVATED ROBBERY as to JIM PETERSON ... and have also found the defendant not guilty of the included offense of ATTEMPTED ROBBERY, then you may consider whether *that* defendant has committed the crime of AGGRAVATED ASSAULT." (Emphasis added.)

7. *See Codianna v. Morris*, 660 P.2d 1101, 1113 (Utah 1983).

8. *State v. Isaacson*, 704 P.2d 555, 557 (Utah 1985).

9. *Id.* (footnote omitted).

10. *See State v. Baker*, 671 P.2d 152, 160 (Utah 1983).

ferred that defendant had the requisite intent to commit murder. Both Ellis and Peterson testified that defendant made threats to kill Ellis. Peterson also testified that defendant had ordered one of the others to "[g]o get the scatter gun. I'm tired of this. We'll just blow [Ellis] away." Defendant also beat Ellis with a club over the head and body, dragged Ellis to the river by means of a leather belt looped around Ellis's neck and throat, and dunked a highly weakened Ellis in a runoff-swollen and swift river. After all of this, defendant left an unconscious, bruised, and bloody Ellis lying in the middle of the camp and went back to town. Viewing these facts and the circumstances as a whole, the jury could reasonably have found that defendant had intended to kill Ellis and had attempted to do so.

■ In order to convict defendant of aggravated robbery, the State had to produce evidence which would have allowed the jury to find that defendant unlawfully and intentionally took personal property from Ellis's person against his will by means of force or fear and either used a deadly weapon or caused serious bodily injury to Ellis in the process.[11] In order to convict defendant of attempted aggravated robbery, the jury had to find that defendant attempted to rob Peterson under the aggravating circumstances listed above. Defendant frisked both Ellis and Peterson looking for money and kept demanding money from both throughout the night. Defendant threatened that they would be made into "dog meat" if they did not come up with money. Defendant beat both Ellis and Peterson with a club and a flashlight and shoved Ellis's hand into the fire repeatedly, demanding money. A wallet and a checkbook were taken from the person of Ellis. Nothing was taken from Peterson because he had nothing in his pockets. Ellis was badly bruised and cut, requiring sixty-five stitches in his head, and was hospitalized. Peterson also had bruises and

cuts. Under these facts, the jury was well within its prerogative to find defendant guilty of both aggravated robbery and attempted aggravated robbery.

Defendant's third point on appeal is that the instruction given to the jury on voluntary intoxication was confusing and misleading. The instruction, as given, states:

Under the law, a state of voluntary intoxication from alcohol or drugs is not a defense to a criminal charge unless such intoxication is of such a degree or state as to negate the existence of the mental state which is an element of the offense and which in the case of each of the charges now before the court, is that one acted intentionally or knowingly. Evidence of intoxication, whether it be from the influence of drugs or alcohol, may thus be taken into consideration by the jury in connection with determining the intent with which any particular act may have been committed.

But being under the influence of drugs or alcohol is no excuse for the commission of a crime where it merely makes a person more excited or reckless, so that one does things one might not otherwise do.

Defendant objected to the instruction at trial, but did not state grounds for his objection. Defendant's objection, in total, stated: "I object to the inclusion of the second paragraph in the instruction that begins 'under the law a state of voluntary intoxication.' That's all the objections I have...."

■ Rule 19(c) of the Utah Rules of Criminal Procedure [12] states:

No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury is instructed, stating distinctly the matter to which he objects and the ground of his objection. Notwithstanding a party's failure to object, error may be assigned

---

11. U.C.A., 1953, §§ 76–6–301(1), –302(1) (Repl. Vol. 8B, 1978 ed.). *See also State v. Smith,* 706 P.2d 1052, 1056 (Utah 1985).

12. U.C.A., 1953, § 77–35–19(c) (Repl.Vol. 8C, 1982 ed.).

to instructions in order to avoid a manifest injustice.

While defendant timely objected to the second paragraph of the above instruction, no ground for the objection was stated, and the ground was not apparent from the text of the instruction. Furthermore, the instruction is almost identical to the first three sentences of the instruction cited with approval in *State v. Sisneros* [13] and *State v. Burton* [14] and parallels U.C.A., 1953, § 76–2–306 (Repl.Vol. 8B, 1978 ed.), the voluntary intoxication defense statute.

Finally, the instruction clearly states that the mental state required in each of the offenses before the court is that defendant acted intentionally or knowingly. Thus, the jury could not have been misled into thinking that recklessness was the mental state required for any of the specific intent crimes charged here. Therefore, we conclude that the trial court did not abuse its discretion by giving the challenged instruction.

Defendant's fourth point on appeal is that the trial court abused its discretion by refusing to instruct the jury on the theory of voluntary termination. A defendant is entitled to a jury instruction on his theory of the case only if there is a reasonable basis in the evidence to justify giving the requested instruction. [15] To justify giving a termination instruction, defendant must show that he voluntarily terminated his efforts prior to the commission of the offense and either gave timely warning to the police or to the intended victim, or wholly deprived his prior efforts of effectiveness. [16] Defendant has met none of these requirements. First of all, defendant adduced no evidence that he terminated his efforts before the offenses occurred. To the contrary, there was substantial evidence that defendant was a full participant in all of the events of the evening. While there is some evidence that defendant may have left the campsite a short time before some of the others, the evidence clearly shows that he did not leave until after the commission of the offenses. Second, there was no evidence whatsoever that defendant warned the police or the victims or that he deprived his prior efforts of effectiveness. Finally, under defendant's theory of the case that he did not participate in the assaults or robberies, the voluntary termination instruction was inapplicable. The trial court thus did not abuse its discretion by refusing to give the instruction.

Defendant's fifth point on appeal is that the trial court erred by refusing to instruct the jury on simple assault. The trial court on its own motion instructed the jury that aggravated assault was a lesser included offense of aggravated robbery. Defendant then requested an assault instruction. The judge refused, stating: "Well, the court doesn't feel the facts justify any simple assault. In other words, the people were either assaulted or they weren't. They were assaulted with bodily injury or there wasn't any assault at all." Under the facts of this case, the trial court properly refused to instruct the jury on the lesser included offense of assault.

To determine whether an offense is included in a charged offense, the trial court must first determine whether the offense is established by proof of the same or less than all the facts required to establish the commission of the offense charged. [17] If the same facts tend to prove elements of more than one statutory offense and the

**13.** 631 P.2d 856, 859 (Utah 1981).

**14.** 642 P.2d 716, 717 (Utah 1982). The instruction in *Burton* has one additional sentence which reads: "To be a defense to such a crime, one must be so under the influence of alcohol that at the time of the alleged offense he did not know what he was then doing, so that he was then and there incapable of forming the necessary intent." The instruction in *Sisneros* has an additional sentence which is almost identical in pertinent part to the sentence just quoted from *Burton.* 631 P.2d at 859.

**15.** *State v. Stone,* 629 P.2d 442, 446 (Utah 1981).

**16.** U.C.A., 1953, § 76–2–307 (Repl.Vol. 8B, 1978 ed.).

**17.** U.C.A., 1953, § 76–1–402(3)(a) (Repl.Vol. 8B, 1978 ed.).

evidence is ambiguous and susceptible to alternative explanations, the trial court must give the lesser included offense instruction if any one of the alternative interpretations provides both a rational basis for a verdict acquitting defendant of the offense charged and convicting him of the included offense.[18]

Defendant took the stand in his own defense at trial. His theory was that no assault occurred or, if one did, he had no part in it. Thus, defendant's own theory of the case precluded giving the instruction.[19] Further, no other evidence supports giving the instruction. It was undisputed that serious bodily injury occurred to the victims. Additionally, the evidence was undisputed that a deadly weapon or such means or force likely to produce death or serious bodily injury was used. These two elements separate aggravated assault from assault. The only basis for finding defendant not guilty of aggravated assault would have been the jury's determination that defendant was not responsible in any fashion for any of the victims' injuries and did not engage in any actions amounting to assault. Because the assaults committed upon Ellis and Peterson were indisputably aggravated, there would have been no basis for finding defendant guilty of the lesser crime of assault if he was found innocent of the greater crime of aggravated assault. The trial court thus did not err in refusing to give the instruction.

Defendant's convictions are affirmed.

HOWE, DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.

---

**18.** *State v. Oldroyd,* 685 P.2d 551, 553–54 (Utah 1984); *Baker,* 671 P.2d at 158–59.

**19.** *See State v. Shabata,* 678 P.2d 785, 790 (Utah 1984).