STATE of Utah, Plaintiff and
Respondent,

v.

Phil Anthony ARCHULETA,
Defendant and Appellant.

No. 860111.

Supreme Court of Utah.

Nov. 10, 1987.

Joan C. Watt, Salt Lake City, for defendant and appellant.

David L. Wilkinson and David B. Thompson, Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

A jury convicted defendant of rape pursuant to Utah Code Ann. § 76–5–402 (Supp. 1985). On appeal, defendant argues that (1) the State failed to introduce sufficient evidence to support the verdict; (2) the trial judge improperly excluded evidence of the victim's prior sexual experience; and (3) defense counsel did not adequately represent defendant. We affirm.

The victim is a mentally impaired woman with an IQ of 64 or 65. She was described at trial as having an extremely passive personality. At the time of the offense, she lived alone in an apartment in the same complex where defendant lived with his girlfriend.

On October 8, 1985, the victim and seven other handicapped women went on a supervised outing to a local "haunted" house. Ms. Wellever, the chaperone/social worker in charge of the group, allowed the women to invite male friends. The chaperone invited defendant's girlfriend, but she could not attend. Defendant, however, went on the outing in a separate car.

Defendant purchased admission tickets for the victim and two other women. While inside the house, defendant walked with the victim part of the time and attempted more than once to kiss her. With each attempt, she told him "no" and pushed him away.

After the outing, defendant met the victim outside of her apartment and asked her if she would like to accompany him to a local bar to look at some of his drawings. Having an interest in drawing, she agreed. After leaving the bar, he purchased a twelve-pack of beer at a grocery store, and they returned to the apartment complex. On their way back, defendant tried to kiss her twice, and she refused each time by saying "no."

When they arrived at the complex, defendant asked the victim if he could go to her apartment to see her drawings and to draw with her. She agreed. While in the apartment, defendant turned the lights off, despite the victim's expressed wishes to have them on. After four unsuccessful attempts to keep the lights on, she acquiesced, and they sat on the floor and watched television.

Defendant gave the victim some beer and told her to drink it quickly. He also encouraged her to change into something more comfortable, which she declined to do. When he moved closer to her and put his arm around her, she told him not to do so because she found it uncomfortable.

Defendant began to unbutton the victim's shirt, and she told him she did not want him to do this. Despite the victim's protests, defendant removed first her clothing and then his own. Defendant then lay down on her bed, grabbed her, and pulled her onto the bed with him.

Defendant engaged in various sex acts with the victim. During this time, she told him "no" several times. The victim further testified that during a second episode of sexual intercourse, she said "no" yet again and tried to physically push defendant away, but that he continued for some time until he finally withdrew.

The victim then put on some underpants and a nightshirt and repeatedly told defendant to leave the apartment. According to her, defendant got up, threw her on the bed, put his fingers inside her underwear to stroke her vagina, and when she began crying, threatened to hit her if she did not "quiet down." According to defendant, he got dressed, threatened to hit her if she did not stop crying, and left the apartment.

At trial, the victim testified that she did not attempt to escape or obtain help because of the late hour and her fear of defendant. The victim called Ms. Wellever twice the next day. On the second occasion, she told Ms. Wellever what had happened the night before. Ms. Wellever went to the victim's apartment, and the victim told her the details of the events from the preceding night. Ms. Wellever had to explain to the victim what a rape charge was, and the victim agreed that she should file such a charge.

The victim underwent a post-rape examination. The examination revealed tenderness in the abdominal area and a ruptured hymen; it did not reveal any blood or semen.

■ Defendant argues first that the State failed to introduce enough evidence to establish lack of consent beyond a reasonable doubt.

In reviewing a claim of insufficiency of the evidence, this Court must view the evidence in the light most favorable to the jury verdict. "A verdict will be overturned only when the evidence is so lacking and insubstantial that a reasonable person could not have reached that verdict beyond a reasonable doubt."

*State v. Dumas,* 721 P.2d 502, 504 (Utah 1986) (quoting *State v. Isaacson,* 704 P.2d 555, 557 (Utah 1985)); *see also State v. Stettina,* 635 P.2d 75, 76–77 (Utah 1981); *State v. Mills,* 530 P.2d 1272, 1272–73 (Utah 1975). According to defendant, this case falls within the *Dumas* standard for several reasons. First, no physical evidence corroborates the victim's testimony.

The State did not present evidence of violence, such as torn clothing or medical reports showing that the victim had sustained any injury. Second, defendant argues that the victim's testimony lacks internal consistency. Defendant argues that her failure to escape despite opportunity to do so and failure to cry out despite evidence that her apartment had "thin walls"[1] are inconsistent with her assertion that she did not consent to intercourse. Defendant also cites her delay in reporting the incident as inconsistent with lack of consent. Third, defendant argues that the victim did not take reasonable steps to communicate her lack of consent to defendant. According to defendant's brief, her repeated verbal refusals, without increased physical resistance, failed to show her opposition to intercourse.

The reasoning in *State v. Stettina,* 635 P.2d 75 (Utah 1981), controls defendant's arguments concerning failure to prove lack of consent. In *Stettina,* the defendant left a tavern with the victim and went to a sloped area across the street, where they were out of view. He claimed that the absence of any injury to the victim and her failure to scream or call out made her story inherently improbable. He also claimed that the victim laughed and giggled when she refused his advances and therefore failed to properly communicate her lack of consent. The victim, on the other hand, testified that she did not resist because the defendant had threatened her and she was afraid. The Court rejected the defendant's argument and upheld the conviction.

As in *Stettina,* the principal evidence supporting the conviction in this case consisted of the victim's testimony, there being no decisively corroborating physical evidence. We again decline to adopt the position that the testimony of a rape victim, without more, cannot support a conviction. We are especially reluctant to do so in a case such as this, where nothing contradicted the victim's testimony.

---

1. The testimony of another witness disputes this assertion. According to one of the other tenants, the building does not have thin walls and he could only hear noise from the victim's apartment when he and the victim both had their doors open.

The physical evidence in this case did not contradict the victim's version of the events. The victim did not allege that a struggle took place or that defendant's attack caused her serious visible injury; her testimony was consistent with the physical evidence introduced. While the jury could have adopted the interpretation of the facts that defendant advocates on appeal, it did not. Where the evidence lends itself to varying interpretations, we will not substitute our judgment for that of the jury.

*Stettina* also applies to defendant's sufficiency arguments based on internal inconsistency of the victim's testimony and failure to adequately communicate lack of consent. As to the first argument, the Court in *Stettina* did not find the victim's failure to escape or call for help despite the closeness of the tavern inconsistent with the victim's assertion that she did not consent. The Court found the victim's explanation adequate to explain her failure to escape or call out. *Id.* at 77–78. In this case, the victim explained that she was afraid of defendant and failed to seek help for that reason. Although no evidence showed that defendant directly threatened her, she did testify that he "grabbed" her arm and "pulled" her onto the bed. Given her intellectual deficit and her personality, the jury could justifiably infer from the evidence that fear of defendant and the late hour prevented her from escaping or calling out.

As for failure to communicate lack of consent, the evidence more than amply supports the finding that the victim adequately communicated her lack of consent to defendant. She repeatedly told him "no" and tried to push him away when he made advances. She pleaded with him to stop during his attempts at sexual intercourse and, during the second attempt, began to cry and tried to push him away. Her actions, substantially more assertive than those of the victim in *Stettina,* could not have been mistaken for consent.

We note that in *Stettina,* the defendant expressly threatened the victim in order to coerce her to engage in sexual intercourse with him. In this case, the evidence does not show that defendant overtly threatened the victim. Utah Code Ann. § 76–5–406(1) (Supp.1987), however, provides that a person commits rape when "the actor compels the victim to submit or participate by force that overcomes such earnest resistance *as might reasonably be expected under the circumstances.*" (Emphasis added.) Given the victim's intellectual disability, the jury could easily find that her constant verbal refusals, combined with her emotional distress and attempts to push defendant away, established earnest resistance under the circumstances.

■ Defendant argues that the State cannot rely on the victim's disabilities because it failed to request an instruction under Utah Code Ann. § 76–5–406(4) (Supp. 1987). That section provides that a person commits rape when "[t]he actor knows that as a result of mental disease or defect, the victim is at the time of the act incapable either of appraising the nature of the act or of resisting it." This argument misconstrues the State's case. The State does not argue, and the evidence does not show, that the victim lacked the *ability* to consent, merely that under the circumstances of this case, her resistance was reasonable. As we have already stated, the evidence is sufficient to support a jury finding of lack of consent under this standard.

■ Defendant also argues that the State failed to prove that he and the victim engaged in intercourse. He bases this argument, again, on his assertion that no medical evidence corroborated the victim's testimony. Our holding that the victim's testimony could support the jury's conclusion that she did not consent also disposes of defendant's allegation that the State failed to prove that the parties had engaged in intercourse. As with the victim's other testimony, defendant failed to offer any evidence directly rebutting her assertions concerning intercourse.[2] The State

---

**2.** Defendant's allegation in his brief concerning this element seems to contradict his theory of the case. Although confusing, the opening and

closing arguments seem to rely chiefly on the theory that the victim consented to intercourse, not on the theory that the State had failed to

introduced sufficient evidence to support this element of the charge.

■ Defendant next argues that the trial court improperly excluded evidence of the victim's prior sexual experience. In *State v. Johns*, 615 P.2d 1260 (Utah 1980), we held:

> While the balancing of the probative value of the evidence and its detrimental effect is entrusted to the discretion of the trial judge in the usual case such evidence, either of general reputation or specific prior acts, is simply not relevant to any issue in the rape prosecution *including the consent of the prosecutrix*. Such evidence is admissible only when the court finds under the circumstances of the particular case such evidence is relevant to a material factual dispute and its probative value outweighs the inherent danger of unfair prejudice to the prosecutrix, confusion of issues, unwarranted invasion of the complainant's privacy, considerations of undue delay and time waste and the needless presentation of cumulative evidence.
>
> However, absent circumstances which enhance its probative value, evidence of a rape victim's sexual promiscuity, whether in the form of testimony concerning her general reputation or testimony concerning specific acts with persons other than defendant is ordinarily insufficiently probative to outweigh the highly prejudicial effect of its introduction at trial.

*Id.* at 1264 (emphasis added; citations omitted). On appeal, defendant argues that the circumstances of this case necessitated introduction of the disputed evidence because the State had portrayed the victim "as a naive, slightly retarded woman who did not understand what was happening." The record does not, however, support this characterization of the State's case. The State introduced evidence establishing that the victim had a "non-assertive" personality, but did not attempt to establish her naivete. Thus, evidence of prior sexual experience would not have rebutted the

State's characterization of the victim's personality and therefore lacked relevance. The trial judge properly excluded the evidence.

■ Finally, defendant argues that he did not receive effective assistance of counsel at trial. In order to succeed on a claim of ineffective assistance of counsel, an appellant must show

> [first] that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).

Before this Court will consider whether specific conduct falls below the required standard of objective reasonableness, the person arguing ineffective assistance must show that the conduct prejudiced his case. *Id.* at 697, 104 S.Ct. at 2069; *see also State v. Frame*, 723 P.2d 401, 405 (Utah 1986). In order to prove prejudice to his case, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. In this case, defendant has failed to make the threshold showing of prejudice.

Defendant cites the following incidents in support of his claim: (1) counsel admitted to the jury in his opening statement that this case was his first jury trial; (2) the trial judge had to remind counsel during the opening statement that counsel could

---

prove that intercourse had occurred. One of the State's witnesses did testify, however, that defendant denied during interrogation that he

and the victim had done anything more than "kissing and hugging."

not use the opening statement to argue his case; (3) counsel stipulated to the admission of the post-rape examination results; (4) counsel did not present any evidence to explain the examination results; (5) counsel made no attempt to correct the prosecutor's unfounded interpretation of the examination results; (6) counsel failed to object to other statements made by the prosecutor during closing argument; (7) counsel failed to preserve a record as to defendant's request for a new attorney; and (8) counsel failed to request an instruction on a lesser included offense.

As to the alleged deficient performance in defense counsel's opening statement, defendant argues that the conduct prejudiced his case because it caused the jury to give more credence to what it perceived as the more experienced attorney. We find the allegation of prejudice wholly speculative and fail to see how the absence of counsel's comment and the judge's reminder would give rise to a reasonable likelihood of a different result.

■ Defendant has also failed to meet the threshold showing of prejudice with respect to the introduction of and comment on the medical evidence. The medical evidence introduced was not sufficiently inculpatory to warrant a finding by this Court that counsel's stipulation to its admission without rebuttal evidence had any prejudicial effect on defendant's case. At most, the evidence indicated that the victim had had sexual intercourse at some time during her life.

■ Nor did the prosecutor's statement during closing argument that the medical evidence showed that the victim had participated in sexual intercourse the night before prejudice defendant's case. Although the evidence did not directly support the victim's testimony or the prosecutor's assertion, it did not directly contradict it. Moreover, the evidence introduced was clear enough that the jurors could have drawn their own conclusions despite the prosecutor's statements. Thus, no reasonable likelihood exists that, but for the alleged deficiency, defendant could have obtained a different result.

We also note with respect to the medical evidence that at trial, defendant apparently based his defense on an assertion that the prosecutor failed to prove lack of consent, not that defendant had not had intercourse with the victim. Because the medical evidence and the prosecutor's statement went to the issue of whether the victim had had intercourse, introduction of that evidence did not prejudice defendant's case.

■ Defendant has also failed to establish prejudice with respect to his sixth and seventh allegations of deficient performance. As to the sixth allegation, counsel argues that the prosecutor made "other misstatements and unwarranted conclusions"; however, defendant only cites to one other comment made by the prosecutor. The prosecutor stated that defendant "*knew* that he could take advantage of [the victim]." This statement is not without support in the evidence. Ms. Wellever testified that the victim had a nonassertive personality, and the victim testified that she and defendant knew each other and lived in the same apartment complex. From this evidence, the prosecutor could legitimately have inferred that defendant had some knowledge of the victim's personality traits and that he could exploit them to his advantage.

■ As to the seventh allegation, defendant fails to show how it affects the outcome of his case. Defense counsel's failure to preserve a record with respect to defendant's request for a new attorney could not, by itself, have affected his conviction.

■ Finally, defendant argues deficient performance in defense counsel's failure to request a lesser included offense instruction on fornication. Again, defendant has failed to show a reasonable likelihood of a different result absent the alleged deficient conduct. The issue was consent, and defendant would have had an acquittal if the jury had not been convinced that there was none. The bulk of the evidence introduced at trial consisted of the victim's uncontradicted testimony. That evidence established all of the elements of the crime with

which defendant was charged; therefore, the failure to request an instruction on a lesser included offense did not prejudice defendant.[3]

For the reasons stated above, we affirm defendant's conviction.

HALL, C.J., STEWART, Associate C.J., and HOWE and ZIMMERMAN, JJ., concur.

---

**3.** In *Codianna v. Morris*, 660 P.2d 1101 (Utah 1983), this Court held that failure to request a lesser included offense instruction did not automatically constitute deficient performance. Where, however, compelling evidentiary support for the lesser included offense exists, failure to request the instruction "could be evidence of faulty performance." *Id.* at 1113. This case does not have the requisite "compelling eviden-tiary support." The victim's uncontradicted testimony established all the elements of rape. Absent some evidence to support a jury's convicting defendant of a lesser included offense, defendant cannot complain that defense counsel's performance was deficient because he failed to request an instruction on such an offense.