**STATE of Utah, Plaintiff and Appellee,**

v.

**Daniel PADILLA, Defendant and Appellant.**

**No. 870330.**

Supreme Court of Utah.

June 30, 1989.

David L. Wilkinson, Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

Phil L. Hansen, Salt Lake City, for defendant and appellant.

DURHAM, Justice:

Defendant Daniel Padilla appeals from a conviction of second degree murder, a first degree felony. His principal claims of error are (1) that the trial court improperly refused to give his proposed second degree murder and manslaughter instructions; and (2) that the court erred in failing to instruct the jury that intoxication can be a defense to a criminal charge if it negates the existence of a mental state which is an element of the offense. We affirm.

On October 17, 1986, defendant and a group of eight friends met in the mountains of Carbon County to prepare for the annual deer hunt, which was to start the next day. During the day, defendant consumed some beer and whiskey around the campfire. Later that evening, two members of the hunting party, Anthony Palacios and Randall Ray, went into a camping trailer to rest. Defendant followed the two men into the trailer, and an argument ensued. Following the confrontation, Palacios and Ray went for a ride, returning approximately fifteen minutes later. Palacios again entered the trailer, where he and defendant began arguing. When defendant and Palacios came out of the trailer, they were still arguing. Defendant went over to Palacios' truck, took out his rifle, loaded a shell into it, and fired a shot in the direction of the campfire, where the other members of the hunting party were located. He then loaded another shell into his rifle and ran toward the area where

Palacios was standing. He stopped within a few feet of Palacios and fired a shot. The bullet entered Palacios' abdomen and exited through his lower back. The shot killed him almost immediately.

After being properly advised of his *Miranda* rights, defendant told an officer of the Carbon County sheriff's department that the shooting was an accident and that he had not intended to shoot the victim. He claimed that when he picked up his rifle to inspect it, the gun had accidentally misfired and hit the victim.

Defendant was arrested and charged with second degree murder. At trial, the jury was instructed as to second degree murder, manslaughter, and negligent homicide. The jury returned a verdict of second degree murder.

■ Defendant's first claim on appeal is that the trial court erred in failing to instruct the jury that second degree murder required proof of "malice aforethought." This Court has recently decided this issue. In *State v. Standiford*, 769 P.2d 254 (Utah 1988), we examined the definition of second degree murder and determined:

> The present Criminal Code [has] abandoned the common law terminology of malice aforethought and adopted more descriptive and precise language describing the requisite culpable mental states in defining the various crimes. Since the term "malice aforethought" is a confusing carry-over from prior law and could lead to confusion, if not error, it should no longer be used.

*Id.* at 258–59. Therefore, the trial court properly instructed the jury in the statutory language and correctly refused to give defendant's requested malice aforethought and absence of malice instructions. *See State v. Bolsinger*, 699 P.2d 1214 (Utah 1985); *State v. Fontana*, 680 P.2d 1042 (Utah 1984).

■ Defendant's second argument is that the trial court improperly refused to give a requested instruction on "heat of passion." *Standiford* also addressed this

issue, concluding that instead of incorporating the heat of passion standard into the definition of "manslaughter," the present Criminal Code redefined and enlarged the standard to include any extreme emotional disturbance based on a reasonable excuse or explanation that mitigates the blameworthiness of the homicide. Utah Code Ann. § 76–5–205(1)(b) (Supp.1988); *Standiford*, at 259. The manslaughter instruction given by the trial court specifically incorporated the mental state requirement of the statute and was correct.

■ Defendant also argues that the trial court erred by failing to instruct the jury that specific intent is an essential element of second degree murder and of manslaughter. Prior to the adoption of Utah's Criminal Code in 1973, all criminal offenses were categorized as general or specific intent crimes. The present Criminal Code has eliminated the common law distinction between general and specific intent crimes and adopted more descriptive and precise language describing specific crimes. *See Standiford*, at 260 n. 3. The present Criminal Code provides:

> Every offense not involving strict liability shall require a culpable mental state, and when the definition of the offense does not specify a culpable mental state and the offense does not involve strict liability, intent, knowledge, or recklessness shall suffice to establish criminal responsibility....

Utah Code Ann. § 76–2–102 (Supp.1988).

In this case, the trial court gave second degree murder and manslaughter instructions in the language of the statute. The instructions given by the trial court did not use the term "specific intent," nor were they required to. *Standiford*, at 260–61. Therefore, the jury was properly instructed, and the trial judge did not err when he refused to give defendant's requested specific intent instructions.

Defendant next argues that the trial court's failure to instruct the jury that second degree murder and manslaughter

require proof of specific intent denied him his constitutional rights of due process and equal protection of the law. We understand his point to be that equal protection and due process entitle him to the same instructions on malice aforethought and heat of passion given defendants prosecuted under the common law and earlier forms of the criminal statute. This argument is frivolous. As discussed above, the instructions given by the trial court with respect to second degree murder and manslaughter accurately reflect the statutory definitions of those crimes.

■ Defendant's final claim is that the voluntary intoxication instruction given by the trial court was in error. Instruction No. 11, given to the jury, stated:

Our law provides that no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such a condition. This means that such a condition, if shown by the evidence to have existed in the defendant at the time when allegedly he committed the crime charged, is not itself a defense. It may throw light on the occurrence and aid you in determining what took place; but when a person in a state of intoxication, voluntarily produced in himself, commits a crime, the law does not permit him to use his own vice as a shelter against the normal, legal consequences of his conduct.

However, when the existence of any particular motive, purpose or intent is a necessary element to constitute a particular kind or degree of crime the jury, in determining whether or not such motive, purpose or intent existed in the mind of the accused, may take into consideration the evidence offered to prove that the accused was intoxicated at the time when the crime was allegedly committed.

This fact requires an inquiry into the state of mind under which the defendant committed the act charged, if he did com-mit it. In pursuing that inquiry, it is proper to consider whether he was intoxicated at the time of the alleged offense. The weight to be given the evidence on that question and the significance to attach to it, in relation to all the other evidence, are exclusively within your province.

The law further provides however, that if recklessness or criminal negligence is an element of the offense and the actor is unaware of the risk because of voluntary intoxication, his unawareness is immaterial in a prosecution for that offense. Therefore, in determining the existence or nonexistence of the crimes of manslaughter or negligent homicide, the existence or nonexistence of a state of intoxication shall not be considered by you when considering whether the defendant was aware of any risk being created.

Instruction No. 11 quoted extensively from section 76–1–22 of Utah Code Annotated (1953) as it existed until revised in 1973.[1] This section has been replaced by Utah Code Ann. § 76–2–306 (Supp.1988), which provides:

Voluntary intoxication shall not be a defense to a criminal charge unless such intoxication negates the existence of the mental state which is an element of the offense; however, if recklessness or criminal negligence establishes an element of [the] offense and the actor is unaware of the risk because of voluntary intoxication, his unawareness is immaterial in a prosecution for that offense.

Thus the intoxication instruction given by the trial court did not reflect the content of the current statute on voluntary intoxication and was erroneous. Nevertheless, the failure of the trial court to properly instruct the jury in this case was harmless error. Although defendant contends in his brief on appeal that the alcohol he consumed rendered him so intoxicated as to negate any knowledge of or intent associat-

---

1. Although this instruction quoted extensively from Utah Code Ann. § 76–1–22 (1953), the last paragraph apparently was based upon Utah Code Ann. § 76–2–306 (1978).

ed with the shooting, he did not make that contention at trial. The evidence was very limited as to the degree of defendant's intoxication and whether it affected his actions in any way. Eyewitnesses to the incident testified that defendant was not incapacitated, and deputy sheriffs who examined defendant shortly after the incident testified that he talked intelligently and did not appear to be intoxicated. They did not even believe that a field sobriety test was warranted. Defendant himself testified in detail about the events leading up to the incident, but claimed to have lost his memory regarding the shooting itself. This evidence all tends to negate defendant's position that he was so intoxicated that he "blacked out" before and during the time of the shooting.

Further and more importantly, defendant did not rely on an intoxication defense as his theory of the case. Generally, a defendant is entitled to instruction on his theory of the case if there is a reasonable basis in the evidence to justify giving the requested instruction. *State v. Dumas,* 721 P.2d 502, 506 (Utah 1986). But here, defendant specifically excluded an intoxication theory from his trial strategy. During opening remarks, defense counsel stated, "[A]lcoholism can go to the point of destroying your specific intent, which is a required element of murder. It would be a complete defense. We're not claiming that."

The defense's trial strategy was not premised on the theory that defendant was so intoxicated at the time of the crime that he was unable to form the requisite intent necessary for second degree murder. Rather, the defense asserted that the shooting was accidental. Defendant relied on his statement to deputy sheriffs shortly after the incident that he never intended to shoot the victim and that his gun had discharged accidentally. He did not rely on testimony that alcohol rendered him incapable of forming the necessary intent. Therefore, even though the trial court's instruction misstated the applicable law, neither the evidence nor defendant's theory

of the case would have caused the jury to acquit on the basis of intoxication, and the trial court's error was harmless.

Defendant's conviction is affirmed.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.