STATE of Utah, Plaintiff and Respondent,

v.

David J. HUNT, Defendant and Appellant.

No. 880386–CA.

Court of Appeals of Utah.

Oct. 5, 1989.

---

Randine R. Salerno, Ogden, for defendant and appellant.

R. Paul Van Dam and Dan R. Larsen, Salt Lake City, for plaintiff and respondent.

Before Judges DAVIDSON, BENCH, and BILLINGS.

## OPINION

DAVIDSON, Judge:

Defendant David J. Hunt appeals from a bench trial conviction for possession of a controlled substance with intent to distribute for value. Defendant argues on appeal that the failure of the county attorney to sign the application for an intercept order invalidated the application, and therefore, the evidence obtained pursuant to the order should be suppressed. We affirm.

## FACTS

On May 23, 1986, Weber County Attorney Donald C. Hughes, Jr. filed an application for an order to intercept wire communications from Hunt's residence. The application was supported by an affidavit signed by Sergeant Glen Warner, naming defendant as the main person involved in a drug organization that purchases and transports cocaine to suppliers along the Wasatch Front. Hughes inadvertently failed to sign the application. The omission was not initially noticed and Judge Wahlquist signed the order authorizing interception of defendant's wire communications from May 29, 1986 through June 28, 1986. During that month, however, defendant left Salt Lake City and lived in California.

On June 27, 1986, Deputy Weber County Attorney. William F. Daines applied for an extension of the intercept order. Attached to the application was an affidavit submitted by Sergeant Warner setting forth the results of the first intercept. Judge Wahlquist granted a thirty-day extension, from June 28, 1986, through July 27, 1986.

On July 26, 1986, Daines applied for a second extension of the intercept order from July 27, 1986 through August 3, 1986. While preparing that application, Daines discovered the omission of Hughes's signature on the original application. Hughes filed a motion nunc pro tunc to execute the original application. Judge Wahlquist granted the nunc pro tunc order making the execution of the original application effective May 23, 1986, and signed the order for the second extension of the intercept. The interception of defendant's wire communications ceased on August 3, 1986.

Based on the information gathered from the interception of defendant's wire communications, the police learned that a large drug transaction was about to take place between defendant and another person in Vista, California. On August 5, 1986, defendant placed a call to the other person and immediately left for California. Detectives in California informed the Utah police of defendant's arrival at the Vista residence.

On August 8, 1986, defendant drove back to Utah followed by four police cars and a police helicopter. The police obtained a search warrant for defendant's home and vehicles and on August 9, 1986, conducted a search. Thirty-four items of personal property were seized including one pound of cocaine, scales, scale weights, and a cocaine screen. Defendant was arrested and charged with possession of cocaine with the intent to distribute for value.

Prior to trial, defendant moved to suppress all evidence seized as a result of the search of his home and vehicles challenging the sufficiency of the probable cause state-

ments in support of the search warrant. The motion was denied and a bench trial was held. Defendant's trial counsel objected at trial to the admission of any evidence obtained as a result of the intercept orders because they were not properly executed. The judge ruled that the omission of the signature was not fatal to the order and that the nunc pro tunc order remedied any error. Defendant was convicted and sentenced to prison.

On May 29, 1988, Hughes filed a belated affidavit establishing his authorization of the application for the intercept order and his special designation of Daines as being "duly authorized," pursuant to Utah Code Ann. § 77–23a–8 (1982).

Defendant argues on appeal that the failure of the county attorney to sign the original application for the intercept order could not be remedied nunc pro tunc and that the order purported to authorize interception for a period in excess of that permitted by section 77–23a–10 (1982). Defendant also argues that the deputy county attorney was not "specially designated" pursuant to section 77–23a–8 to apply for the extensions. Finally, defendant argues that trial counsel provided ineffective assistance because these objections were not timely made.

## AUTHORIZATION FOR AN INTERCEPT ORDER

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 to 2520, provides the framework for the Utah Interception of Communications Act, Utah Code Ann. §§ 77–23a–1 to 77–23a–16 (Supp.1989).[1] The Utah Act, as well as its federal counterpart, set forth the procedure for authorizing and approving the interception of wire communications. The version of section 77–23a–8, which was in effect at the time of trial, authorized the county attorney or any deputy county attorney, "specially designated" by the county attorney, to authorize an application for an intercept order.[2] Utah Code Ann. § 77–23a–10(1) (1982) requires that an application for an intercept order be in writing:

Each application for an order authorizing or approving the interception of wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction, and shall state the applicant's authority to make the application....[3]

Defendant does not take issue with whether the application properly complied with the substantive requirements of section 77–23a–10(1), but claims that the omission of the county attorney's signature invalidated the application.

Federal case law holds that personal approval, or approval in fact, by the Attorney General of an application for an intercept order, overcomes facial insufficiencies because of incorrect signatures or the misidentification of the authorizing attorney general.[4] The test is whether the deficien-

---

1. Since the time of trial in this matter, the Utah Interception of Communications Act was amended by the legislature in both 1988 and 1989.

2. The 1989 amendment eliminated the "special designation" requirement. County attorneys are no longer required to "specially designate" deputy county attorneys to authorize applications for wire interceptions. The 1989 amendment now authorizes any deputy county attorney to authorize wire communications interceptions without first obtaining county attorney approval. Utah Code Ann. § 77–23a–8(1) (Supp.1989).

3. The 1988 amendment to section 77–23a–10(1) inserted "electronic" following "wire" throughout the entire section. Utah Code Ann. § 77–23a–10 (Supp.1988). The legislature, in

1989, also amended section 77–23a–10 but none of those changes affect this appeal.

4. *United States v. Chavez,* 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974); *United States v. Smith,* 726 F.2d 852, 859 (1st Cir.1984) (en banc) ("The absence of a compelling signature on a critical document can be remedied by proof of actual authority."); *United States v. Lawson,* 545 F.2d 557 (7th Cir.1975); *United States v. Thomas,* 508 F.2d 1200 (8th Cir.1975), cert. denied, 421 U.S. 947, 95 S.Ct. 1677, 44 L.Ed.2d 100 (1975); *United States v. Brick,* 502 F.2d 219 (8th Cir.1974) (misidentifying assistant attorney general as authorizing person does not render interceptions unlawful); *United States v. Cox,* 462 F.2d 1293 (8th Cir.1972); *United States v. Bowdach,* 366 F.Supp. 1368 (S.D.Fla.1973); and *United States v. Schullo,* 363 F.Supp. 246, 253 (D.Minn.1973) ("[O]nce the Attorney Gener-

cies are of the type which "require suppression where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Lawson,* 545 F.2d 557, 562 (7th Cir.1975) (quoting *United States v. Giordano,* 416 U.S. 505, 527, 94 S.Ct. 1820, 1832, 40 L.Ed.2d 341 (1974)).

The United States Supreme Court, in *United States v. Chavez,* 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974), decided whether it was appropriate to suppress evidence where statutory application procedures for an intercept order were not fully satisfied. In *Chavez,* the application and court order incorrectly identified the Assistant Attorney General as the authorizing official. Despite this procedural violation, the Supreme Court determined that the Attorney General had in fact authorized the application. The Court held that since there was not a claim of any constitutional infirmity arising from the defect, "it does not follow that because of this deficiency in reporting, evidence obtained pursuant to the order may not be used at a trial of respondents." *Id.* at 570, 94 S.Ct. at 1854. *See also United States v. Bowdach,* 366 F.Supp. at 1373 (congressional scheme not violated where deputy attorney general signed order when attorney general had in fact approved the order). The Court distinguished its holding in *Giordano* by stating, "we did not go so far as to suggest that every failure to comply with any requirement provided in Title III would render the interception of wire or oral communications 'unlawful.'" *Chavez,* 416 U.S. at 574–75, 94 S.Ct. at 1855–56.

In determining whether technical violations rise to the level of constitutional infirmities, consideration of the rationale behind the procedural requirements in the Utah Act is important. Section 2518 of Title III, comparable to section 77–23a–10 of the Utah Act, "was designed to affix the

lines of responsibility as a corollary to promoting a uniform policy in wire interception." *Bowdach,* 366 F.Supp. at 1373. "[A]lthough considerations of centralization and uniformity of decision-making are adjuncts to the protection of privacy, those considerations do not reach the level of constitutional status." *Id.* The purpose behind section 2516 of Title III, comparable to section 77–23a–8, requiring identification of the authorizing official in the application, "facilitates the court's ability to conclude that the application has been properly approved," and also fixes responsibility for the source of preliminary approval. *Chavez,* 416 U.S. at 575, 94 S.Ct. at 1856.

Defendant argues that to require anything less than a sworn writing would effectively destroy the requirement of authorization and provide a convenient means to escape public accountability. However, there was ample evidence to show that Hughes did in fact approve the application for the intercept order, and is clearly accountable for such authorization. The application identified Hughes numerous times as the one authorizing the application and he submitted an affidavit attesting to the fact that he approved the applications. By inadvertently omitting his signature, Hughes did not compromise the privacy of wire and oral communications as provided in section 77–23a–2 (1982).

## "SPECIALLY DESIGNATED" DEPUTY COUNTY ATTORNEY

Defendant contends that the applications for extensions of time for the interceptions were not authorized by a "deputy county attorney specially designated by the county attorney" in accordance with section 77–23a–8 (1982):

[A]ny county attorney or any deputy county attorney *specially designated* by the county attorney, may authorize an application to a Utah State district court judge of competent jurisdiction for, and the judge may grant ... an order autho-

al himself has approved an application for electronic surveillance, further ministerial acts are

unimportant.").

rizing or approving the interception of a wire or oral communication....

(emphasis added.) [5]

This issue is raised for the first time on appeal and "[i]n the absence of exceptional circumstances, [Utah appellate courts have] long refused to review matters raised for the first time on appeal where no timely and proper objection was made in the trial court." *State v. Loe,* 732 P.2d 115, 117 (Utah 1987). Even if this issue had been raised below, the application is, nevertheless, valid. Defendant is merely making a semantic distinction between "specially designated" and "duly authorized." The application for the extension stated that Deputy County Attorney William F. Daines is "duly authorized by Donald C. Hughes, Weber County Attorney, to make this application." In light of the foregoing analysis, this distinction is meritless.

## EFFECTIVE ASSISTANCE OF COUNSEL

██ Defendant finally claims ineffective assistance of counsel. In order to establish ineffective counsel, "it is the defendant's burden to show: (1) that his counsel rendered a deficient performance in some demonstrable manner, and (2) that the outcome of the trial would probably have been different but for counsel's error." *State v. Geary,* 707 P.2d 645, 646 (Utah 1985). *See also Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Failure to show either deficient performance or resulting prejudice will defeat a claim of ineffective counsel. *Geary,* 707 P.2d at 646. The Utah Supreme Court recently applied the *Strickland* test in *State v. Archuleta,* 747 P.2d 1019 (Utah 1987):

Before this Court will consider whether specific conduct falls below the required standard of objective reasonableness, the person arguing ineffective assistance must show that the conduct prejudiced

his case.... (citations omitted). In order to prove prejudice to his case, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* at 1023 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068).

Defendant asserts that his trial counsel was ineffective for the following reasons: (1) he failed to file a timely motion to suppress certain incriminating evidence; (2) he failed to object to the sufficiency of the probable cause statement in support of the search warrant; (3) he failed to object to the sufficiency of the affidavit in support of the intercept order; and (4) he failed to articulate and support his objection to certain evidence.

Defendant's first two claims are inconsistent with the trial record as it appears before us. Trial counsel filed a timely motion to suppress on the ground that the probable cause statement was insufficient to support the search warrant. At trial, counsel also objected, at length, to the sufficiency of the probable cause statement. Both the motion and the objections were denied. We defer to trial counsel's professional judgment and trial strategy in not pursuing this line of objection. *See State v. Medina,* 738 P.2d 1021, 1023 (Utah 1987). "Decisions as to what witnesses to call, what objections to make, and, by and large, what defenses to interpose, are generally left to the professional judgment of counsel." *State v. Wood,* 648 P.2d 71, 91 (Utah 1982), *cert. denied,* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982).

We are not persuaded that defendant's trial counsel was ineffective. Even if all of defendant's claims were true, we are not persuaded that the outcome would have been different.

The governing legal standard plays a critical role in defining the question to be

---

5. The amended portion of section 77–23a–8 currently appears as follows:

The attorney general of the state or any assistant attorney general, or any county attorney or deputy county attorney may authorize an

application to a judge of competent jurisdiction for an order for an interception of wire, electronic, or oral communications....

Utah Code Ann. § 77–23a–8 (Supp.1989).

asked in assessing the prejudice from counsel's errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.

*Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068.

The trial court found defendant guilty beyond a reasonable doubt. The evidence amply supports this finding.

Affirmed.

BENCH and BILLINGS, JJ., concur.