[Crim. No. 8769.   Second Dist., Div. One.   Jan. 30, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. CLAYBORNE MAY, Defendant and Appellant.

Gladys Towles Root and Eugene V. McPherson for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Lawrence R. Tapper, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was convicted of offering to sell marijuana in violation of section 11531, Health and Safety Code; he appeals from the judgment.

One Rosen, who knew Federal Agent Watson and that Deputy Sheriff Austin was working the narcotics detail, called Austin and advised him that defendant told him he was going to Tijuana to buy marijuana. Austin asked Rosen to introduce him to defendant for the purpose of buying 5 kilos. The next day, in front of the Seaman's Union Hall, Rosen introduced defendant to Austin as "Mike." At defendant's suggestion they got into this car; defendant asked Rosen if he was sure Austin was "all right"; Rosen replied: "Yes, he is okay." Defendant then said, "Lets go some place else and talk"; defendant drove to a bar where they discussed Austin's purchase of some "weed" (marijuana) for $110 per kilo. Defendant told Austin he had just gotten out of San Quentin and was broke, he planned to go to Tijuana with a man called Vince to buy some "weed" and bring it back to the United States for "fast money," he and Vince were each going to drive down and bring it back in one of the cars, he intended to borrow his share of the purchase money from a woman and Vince was going to furnish the other half, and they would return from Tijuana by Friday

noon at which time he would meet him (Austin) at Rosen's apartment and deliver the "weed" to him. Before they left the bar defendant asked Austin if he would like to get "loaded" ("smoke marijuana to get intoxicated"); Austin told him "no," he had to attend to some business. Returning to the Union Hall, Austin gave defendant $15 to be applied on the price on delivery. On Friday noon Austin went to Rosen's apartment; defendant was not there. The next day Austin found him at the Laborer's Union; two days later he saw him in his car. Austin asked him if he was going to be able to deliver the marijuana; defendant reached in his pocket and showed him a roll of money and explained that he had his money but was looking for Vince to further arrangements for the trip to Tijuana. At defendant's invitation Austin went with him to an address to look for Vince; they were told he was not in. Returning to the car Austin identified himself as an officer, informed defendant he was under arrest for offering narcotics for sale, and asked if he wanted to help himself by assisting him in purchasing narcotics from Vince. Defendant said Vince could get all the marijuana and heroin he (Austin) could purchase; without threat or promise he agreed to introduce Austin to Vince. Defendant said he never intended to deliver the marijuana to him (Austin) but that he and Rosen were going to "burn him" (take his money).

Several days later defendant introduced Austin to Vince. Vince said he understood he wanted to buy 5 ounces of heroin and asked if he wanted "white" or "brown stuff"; Austin said "white stuff" and asked the cost; Vince said it was $250 per ounce and as soon as a shipment came in he would contact defendant who would contact him and arrange for delivery. After waiting some time without hearing from Vince defendant was taken to the station and booked. Austin received neither the marijuana nor his $15 from defendant.

At the trial defendant denied he ever discussed narcotics with Rosen prior to meeting Austin, and that he ever offered to sell marijuana to Austin. He testified that he and Rosen met Austin at the Union Hall and went to a bar where they discussed narcotics for the first time; that Austin told him he was just off the ship and wanted to "score" some marijuana and was going to Detroit to unload it; that he said to Austin, "What's this all about," and Austin said to Rosen, "I thought you said this guy was all right, that he just got out of the joint. What are you trying to pull on me," and Rosen

said, ''Well, he's all right. I know him real well''; that Austin asked him to obtain some narcotics but he said he knew nothing about narcotics and had never been involved with them; and that they left the bar and Austin said he wanted to see Rosen on Saturday. *Defendant denied he ever received any money from Austin.* He further testified that Rosen told him he was trying to ''burn'' Austin because he had just come off the ship with a lot of money; that several days later Austin showed him his badge and said, ''I've got you for offering. Do you want to play ball'' and he said, ''Yes, I'll play ball. I am on parole''; that then he mentioned Vince only because Austin was threatening him and he had to ''bring somebody up''; and that at the station Austin beat him and brandished his gun in a one-sided game of Russian roulette. Defendant admitted two prior felony convictions.

Appellant raises two issues—the sufficiency of the evidence to support the implied finding that he had a specific intent to sell marijuana, and entrapment.

■ While a specific intent to sell a narcotic is an essential element of the crime of offering to make such a sale under section 11531, Health and Safety Code (*People* v. *Brown,* 55 Cal.2d 64, 68 [9 Cal.Rptr. 816, 357 P.2d 1072]), delivery of the narcotic is not an essential element of the offense. (*People* v. *Jackson,* 59 Cal.2d 468, 469 [30 Cal.Rptr. 329, 381 P.2d 1]; *People* v. *Brown,* 55 Cal.2d 64, 68 [9 Cal. Rptr. 816, 357 P.2d 1072]; *People* v. *Blake,* 179 Cal.App.2d 246, 253-254 [3 Cal.Rptr. 749].) Thus, where money is taken by the accused and no narcotics are delivered, whether he intended to make the sale is a question of fact for the trier.

■ In concluding that defendant intended to sell marijuana to Austin the trial judge, as he had a right to do, accepted Austin's testimony and rejected defendant's version of what occurred. Various circumstances found in the evidence are not only entirely consistent with, but point to, defendant's intention to sell marcotics to the deputy. Before defendant ever met Austin he told Rosen of his plans to go to Tijuana to buy marijuana; and defendant's discussion with Austin in the bar about the details of his plan to go to Tijuana, buy the narcotic, and sell it here for ''fast money'' corroborated what Rosen had told Austin the day before. On the way to the bar defendant asked Rosen if Austin was ''all right''; such query would have no meaning if all defendant wanted to do was defraud him of his $15. While defendant

denied knowing about or ever having been involved in narcotics, the details of his plan to go to Tijuana, his reference to "weed," his acquaintance with Vince (to whom defendant introduced Austin, with whom Austin later discussed narcotics and who, defendant said, could get all he [Austin] could purchase), his plans with Vince and his remark about getting "loaded," are ample proof of his familiarity with narcotics and involvement in such activity. Moreover, it is apparent that defendant's failure to deliver the marijuana to Austin was due, not to his lack of intention to sell to the deputy, but to his inability to complete his plans with Vince to go to Tijuana. Also the fact that defendant thereafter continued to frequent places where he knew Austin could locate him is hardly consistent with a "bunco" operation.

Defendant's statement to the deputy, at the time of arrest, that he never intended to deliver the marijuana but that he and Rosen were going to "burn" him, is of little value to him. Besides being a self-serving statement, its credibility was destroyed by defendant himself who, under oath, denied he ever took $15 or any money from Austin—thereby repudiating the truth of his statement upon arrest. Further, defendant in his statement to the deputy involved Rosen. It is not likely that Rosen, who was working with federal agents and the sheriff's department (obviously then unknown to defendant), would try to defraud Austin. Appellant argues that only $15 on a $550 purchase shows no bona fide offer to sell, at most that he only wanted the money. But the evidence fails to show that defendant requested the $15 from Austin; it appears that Austin voluntarily gave him the $15 to show his good faith and that it was given upon returning to the union hall some time after they had discussed the sale in the bar. Moreover, defendant had no need of the $15 to make up any part of the purchase price for, as he told Austin, he did obtain his one-half of the purchase money from a woman— several days later he showed Austin a roll of bills indicating its source.

Unlike in *People* v. *Jackson,* 59 Cal.2d 468, 469 [30 Cal. Rptr. 329, 381 P.2d 1]; *People* v. *Brown,* 55 Cal.2d 64, 68 [9 Cal.Rptr. 816, 357 P.2d 1072]; and *People* v. *Blake,* 179 Cal. App.2d 246 [3 Cal.Rptr. 749], his defense was not (consistent with his statement on arrest that he intended to "burn" Austin) that he only intended to defraud the officer of the $15, but that he never made any offer to sell marijuana to Austin, knew nothing about and was never involved in narcotics, and at no time ever took any money from Austin.

Thus, from the testimony of Austin and the federal agent (who had the parties under surveillance much of the time), in the absence of any compelling evidence that defendant's offer to sell marijuana to Austin was false, the trial court reasonably concluded that defendant meant what he said when he agreed to sell and deliver to Austin 5 kilos of marijuana.

Without merit is the contention that the information requires a reversal of the conviction because it failed to allege defendant's specific intent to sell narcotics. The accusation specifically alleges a violation of section 11531, Health and Safety Code, and follows the language of the statute, (it charged defendant did wilfully, unlawfully and feloniously "offer to sell, offer to furnish and give away a narcotic, to wit, marijuana") and nothing beyond that is required in the absence of special demurrer. (*People* v. *Gelardi,* 77 Cal. App.2d 467 [175 P.2d 855].)

We find in the evidence no circumstance pointing to entrapment. At the trial defendant made no effort to prove he was induced to commit the acts for which he was tried. His defense was that he did none of the acts attributed to him by Austin; he denied that he ever offered to sell Austin narcotics or anything else, or even took his money. Thus, it appears that the defense of entrapment was not an issue. (*People* v. *Tillman* 142 Cal.App.2d 404 [298 P.2d 631].) However, reviewing the prosecution's case (*People* v. *Benford,* 53 Cal.2d 1, 12 [345 P.2d 928]) we find no evidence to support any issue of entrapment or finding thereon. The record shows only that the deputy asked defendant to sell him 5 kilos of marijuana and defendant agreed; defendant even voluntarily disclosed to Austin the details of his plan to obtain it in Tijuana to sell here for "fast money"—plans he had made long before he ever heard of Austin. The evidence reveals but a regular sale with delivery in the future; there is nothing to show the deputy even used the ordinary persuasion found in most sales.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.