**STATE of Utah, Plaintiff and Respondent,**

v.

**Gary CLARK, Defendant and Appellant.**

**No. 880651–CA.**

Court of Appeals of Utah.

Nov. 15, 1989.

Steven C. Vanderlinden, Vanderlinden & Colton, Clearfield, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., Elizabeth Holbrook, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

OPINION

Before BILLINGS, GARFF and GREENWOOD, JJ.

GREENWOOD, Judge:

Defendant Gary Clark appeals his jury conviction of distribution of a controlled substance, a second degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1989). Defendant urges reversal of his conviction, contending that he was improperly convicted of distributing a controlled substance and that the court erred in allowing certain drug paraphernalia to be admitted as evidence. We affirm.

On October 29, 1987, following a confidential tip that an Adam Hicks was trafficking in cocaine, undercover Officer Brian attended a meeting at Hicks's house, where defendant was present. Defendant testified that he had no intention to engage in drug dealing, and was at the meeting only to assist his friend Hicks in undercover police narcotics work. During the meeting, defendant told Officer Brian that the cocaine to be purchased was "extremely good" and that he and Hicks were partners. Defendant testified that he made these statements to maintain his perceived undercover role. Officer Brian testified that defendant also purported to have the equipment to "rock the cocaine out." [1] Defendant denied having made the statement.

Defendant, allegedly at Hicks's request, attempted to phone an individual named Ron Johnson, but could not reach him. Of-

---

1. "Rocking the cocaine out" is apparently a method of recondensing powdered cocaine into forms which appear more pure.

ficer Brian and Hicks then drove to the Johnson residence in Ogden, while defendant went in a separate car to look for Johnson in a bar. Pat Johnson and her daughter were at the Johnson residence when Officer Brian and Hicks arrived. Prior to defendant's arrival at the house, a cocaine transaction was discussed. Unable to find Johnson, defendant went to the Johnson residence. When defendant arrived, details of an agreed-upon cocaine transaction were repeated in his presence. Officer Brian testified that when the meeting adjourned, he observed a "slight contact" that was similar to a handshake between defendant and Pat Johnson. According to Officer Brian, defendant asked Hicks if Hicks had seen defendant give Pat Johnson two and a half grams of "re-rocked" cocaine. En route from the Johnson house, defendant pulled his car up to Officer Brian's car and announced that they were being followed. The tailing car was driven by a narcotics enforcement officer. The original plans made at the Johnson house for a cocaine sale never transpired and defendant had no further contact with the cocaine negotiations after October 29, 1987.

On November 5, 1987, Officer Brian went to defendant's house and told him that Hicks had been arrested and that Hicks had stated that certain drug paraphernalia was at defendant's house. Officer Brian testified he told defendant if he cooperated in cleaning the paraphernalia out of the house, defendant would avoid possession charges. Defendant testified, however, that Officer Brian promised him that he would not press charges if defendant consented to a search of his house. Officer Brian then seized paraphernalia that was presented as evidence at trial. The jury found defendant guilty of arranging the distribution of a controlled substance under section 58–37–8(1)(a)(ii).

## I. Distribution of a Controlled Substance

■ Defendant first contends that he cannot be found guilty of distributing a controlled substance under section 58–37–8(1)(a)(ii), because a sale never took place. Defendant, however, misinterprets section 58–37–8(1)(a)(ii). The statute by its own terms, includes "arranging" for the distribution of a controlled substance as a prohibited act. Section 58–37–8(1)(a) states in part:

> Except as authorized by this chapter, it is unlawful for any person to knowingly and intentionally: ... (ii) distribute a controlled or counterfeit substance, or to agree, consent, offer, *or arrange* to distribute a controlled or counterfeit substance....

(Emphasis added).

In interpreting the statute which preceded section 58–37–8(1)(a)(ii),[2] the Utah Supreme Court explained that

> [i]nasmuch as an actual sale took place in this case, it is unnecessary to address the point, but it is noteworthy that the offense of arranging the distribution for value of a controlled substance does not require the actual distribution. All that is needed is the arrangement for such distribution, coupled with knowledge or intent. Evidence of an actual sale may be helpful, or even necessary, in proving knowledge or intent, but sale itself is not an element of the offense.

*State v. Harrison*, 601 P.2d 922, 924 n. 5 (Utah 1979). We accordingly find that defendant was properly convicted under section 58–37–8(1)(a)(ii) for arranging to distribute a controlled substance even though the sale was never actually consummated.

## II. Sufficiency of Evidence

■ Defendant next asserts the evidence was insufficient to support his conviction. In determining whether evidence is sufficient to support a jury conviction,

> we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We reverse a jury convic-

2. Prior to 1987, arranging for the distribution of a controlled substance, Utah Code Ann. § 58–37–8(1)(a)(iv) (1986), was a separate offense from actual distribution. Utah Code Ann. §§ 58–37–8(1)(a)(ii) (1986), 58–37–8(1)(c) (1986). In 1987, section 58–37–8(1)(a)(ii), as amended, combined the offenses of arranging and distributing into one section.

tion for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.

*State v. Petree,* 659 P.2d 443, 444 (Utah 1983). Further, we recognize that it is the "exclusive province of the jury to determine the credibility of the witnesses and weigh the evidence." *Steele v. Breinholt,* 747 P.2d 433, 436 (Utah Ct.App.1987). *See also State v. Booker,* 709 P.2d 342, 345 (Utah 1985).

We conclude, after reviewing the evidence in a light most favorable to the jury verdict, that there is sufficient evidence to support defendant's conviction. Defendant's incriminating statements to Officer Brian, his presence during the cocaine sale negotiations, his attempts to contact Ron Johnson, and his warning of a tailing car are sufficient evidence for a jury to reasonably conclude that defendant knowingly and intentionally arranged the distribution of cocaine.

### III. Admission of Evidence

■ Finally, defendant contends that the drug paraphernalia was improperly admitted into evidence. At trial, Officer Brian testified regarding the paraphernalia without objection by defendant. It was only after the paraphernalia was offered into evidence by the State that defendant objected, claiming that Officer Brian conducted an illegal search and seizure. Officer Brian's testimony about the paraphernalia and the paraphernalia itself, were offered only to impeach defendant's credibility and not to prove criminal activities. The court denied the motion to exclude the evidence, finding that defendant had consented to the paraphernalia's seizure and that defendant had objected too late.

Defendant claims that admission of the paraphernalia, violated his rights guaranteed by the fourth amendment to the federal constitution and article I, section 14 of the Utah constitution. Because defendant fails to argue that analysis of this issue

under the Utah Constitution would be different than analysis under the federal constitution, no state constitutional analysis is necessary. *State v. Lafferty,* 749 P.2d 1239, 1247 (Utah 1988).

The federal constitutional harmless error standard requires reversal for errors violating the federal constitution unless they are harmless beyond a reasonable doubt. *State v. Tuttle,* 780 P.2d 1203, 1213 (1989). "Under the current [United States] Supreme Court articulation of that standard, an error is harmless if the overwhelming evidence of guilt makes it unlikely beyond a reasonable doubt that the result would have been different absent the error." *Id.* Several factors, including whether the testimony was cumulative, are calculated into whether an error in the admission of evidence offered by the State is harmless under that standard. *Id.*

In this case, Officer Brian had already testified, describing the paraphernalia and where and how he found it, to discredit defendant's assertion that he was only trying to improve his ability to help Hicks's undercover work. Admission of the paraphernalia was, therefore, merely cumulative. We find that even if the trial court erred in admitting the evidence, the error was harmless beyond a reasonable doubt.

We affirm the trial court's verdict.

BILLINGS and GARFF, JJ., concur.