STATE of Utah, Plaintiff and Appellee,

v.

Ross GALLEGOS, Defendant and Appellant.

No. 890513–CA.

Court of Appeals of Utah.

April 8, 1993.

Randall Gaither, Salt Lake City, for defendant and appellant.

Jan Graham and Kenneth A. Bronston, Salt Lake City, for plaintiff and appellee.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Defendant, Ross Gallegos, appeals from his conviction of agreeing, consenting, offering or arranging to distribute controlled substances, second and third degree felonies, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1992). We affirm.

## FACTS

The Provo City Police Department targeted Gallegos for investigation when they

received information that he was involved in the distribution of cocaine and marijuana. The investigating officers learned that Gallegos was staying at Janeal Peterson's residence, and that he was using her telephone to facilitate his drug distribution business. Pursuant to the Interception of Communications Act (the Act or the Utah Act), Utah Code Ann. § 77–23a–1 to –16 (1990), Utah County Attorney Steven B. Killpack authorized Deputy County Attorney James R. Taylor to supervise and apply for a wiretap order authorizing an interception of telephonic communication to and from Peterson's telephone number. The court approved the application and issued the wiretap order. The order authorized interception of

> any ... communications establishing, intending to establish, or concerning the date, time, place, and manner, in which the said Ross Gallegos, his identified co-conspirators listed above, and others as yet unidentified and/or unknown receive, purchase, sell, distribute, transport, order, negotiate for, or take orders for narcotics, marijuana or other dangerous drugs in violation of the laws of the State of Utah.

The order also required the officers to terminate monitoring "upon discovery that the conversation is not relevant to the provisions of this order."

Pursuant to the order, the officers intercepted, tape recorded, and transcribed some of Gallegos's telephone conversations. The officers minimized intercepting conversations outside the scope of the order by terminating monitoring whenever the conversation was not relevant to their investigation. The officers resumed listening for short periods of time to determine whether the conversation had shifted to relevant matters. The officers filed progress reports once a week with the trial court. The reports, among other things, identified individuals who were apparently involved in the distribution of controlled substances. The reports also stated that the officers had followed Gallegos to meetings with other individuals who had been heard discussing or arranging deals involving controlled substances. In reviewing these reports, the court found that "the conversations expected to be overheard were intercepted, that all conversations were recorded, [and] that minimization is continuing."

Gallegos was charged with several counts of distribution or arranging to distribute controlled substances in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp. 1992). Prior to trial, Gallegos moved to suppress all evidence seized as a result of the intercept orders. The trial court denied this motion. After the trial on the charges, the jury found Gallegos guilty of two counts of agreeing, consenting, offering or arranging to distribute cocaine, second degree felonies, and eight counts of agreeing, consenting, offering or arranging to distribute marijuana, third degree felonies, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1992).

## ISSUES

■ Gallegos appeals his conviction, claiming the trial court improperly: (1) failed to use a strict standard in its rulings regarding the Interception of Communications Act; (2) refused to confine the Utah Act to the limitations imposed by the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2516(2); (3) found the deputy county attorney may apply for a wiretap order; (4) failed to make adequate findings to support its order denying Gallegos's motion to suppress; (5) issued an inadequate wiretap order; (6) failed to find the officers did not comply with the wiretap order; (7) convicted Gallegos on insufficient evidence; (8) applied an unconstitutional arranging statute; (9) refused to give the proper jury instructions; and (10) denied Gallegos's motion for mistrial. Issues (2), (3), (4), and (8) were addressed directly in *State v. Peterson*, 841 P.2d 21 (Utah App.1992), where the application for the wiretap order, its supporting affidavit, and the order were the same documents as those challenged by Gallegos.[1] Accordingly, these issues need

---

**1.** Relying on the ruling in *Peterson,* we find that the federal and state acts do not present a con-

no further analysis here. We address the remaining issues in the order listed above.

## STANDARD OF COMPLIANCE

 Gallegos encourages this court to adopt a strict standard of compliance in reviewing all statutory requirements leading to the issuance of a wiretap order under the Utah Act. However, this court applies a substantial compliance test for determining the adequacy of wiretap orders. *State v. Hunt*, 781 P.2d 473, 475–76 (Utah App.1989), *cert. denied*, 789 P.2d 33 (Utah 1990). Every failure to comply with statutory requirements will not render the interception of wire communications unlawful. *See United States v. Chavez*, 416 U.S. 562, 574–75, 94 S.Ct. 1849, 1855–56, 40 L.Ed.2d 380 (1974); *Hunt*, 781 P.2d at 476. Mere technical violations of the statutory requirements do not require suppression, only deficiencies triggering a constitutional defect. *Chavez*, 416 U.S. at 570, 94 S.Ct. at 1854; *Hunt*, 781 P.2d at 476.

## ADEQUACY OF WIRETAP ORDER

 Gallegos claims the trial court improperly issued the wiretap order because the order failed to state sufficient guidelines for minimization, failed to require periodic reports concerning minimization, and allowed nonofficer employees to intercept calls. Gallegos submitted a motion to suppress all evidence obtained under the wiretap order. We review the factual findings underlying a trial court's decision to grant or deny a motion to suppress evidence under a clearly erroneous standard. *State v. Brown*, 201 Utah Adv.Rep. 4, 6, —— P.2d ——, —— (Utah 1992). We review the trial court's legal rulings under a correctness standard. *Id.*

### A. Minimization Requirements

Gallegos argues the wiretap order is deficient and does not comply with Utah law because it fails to "issue guidelines concerning the manner, method, and procedures for minimization." Specifically,

Gallegos claims the order fails to "mention minimization techniques and fails to take affirmative steps to protect against interception of non-targeted calls." Gallegos urges this court to "require every Court order to set forth the manner and method of minimization."

 Utah Code Ann. § 77–23a–10(5)(c) (1990) provides "[e]very order ... shall contain a provision that the authorization to intercept ... shall be conducted so as to minimize the interception of communications not otherwise subject to interception under this chapter." This section does not require an explanation of the manner, method, or procedures for minimization. Rather, it requires only that the order provide a general instruction that the officers minimize the interception of irrelevant communications.

 The wiretap order in this case provided that "monitoring pursuant to this order must be *terminated* upon discovery that the conversation is not relevant to the provisions of this order." (Emphasis added.) The minimization provision of the order essentially tracks the language of the statute, except the order requires termination of the conversation when it is determined to be irrelevant. Where, as here, the basic minimization requirement is implicit in the order authorizing interception, the terms of the general minimization directive can vary and need not be an exact repetition of the statutory language. *See United States v. Rizzo*, 492 F.2d 443, 446 (2nd Cir.), *cert. denied*, 417 U.S. 944, 94 S.Ct. 3069, 41 L.Ed.2d 299 (1974).

Because the wiretap order need not set out the manner, method, and procedures for minimization and because the order required that conversations be terminated when determined to be irrelevant, the order met the minimization requirement.

### B. Periodic Reports

 Gallegos also claims the order failed to require "periodic reports concerning

---

flict in this case, the trial court made adequate findings supporting its denial of Gallegos's motion to suppress wiretap evidence, the wiretap

order was lawful, and the trial court properly denied Gallegos' motion for mistrial.

minimization." A wiretap order *"may* require reports to be made to the judge who issued the order, showing what progress has been made toward achievement of the authorized objective and the need for continued interception." Utah Code Ann. § 77–23a–10(6) (1990) (emphasis added). The statute makes reporting discretionary with the court and thus, the omission of the requirement of reporting does not require suppression. Further, the statute does not require the reports to include minimization efforts. Finally, the order in this case in fact required that "written reports" be filed every week, which was done. Accordingly, Gallegos's argument is without merit.

### C. Nonofficer Interception

■ Gallegos alleges the order violates the Utah Act because it "improperly authorized police department employees to participate in the interception." Utah Code Ann. § 77–23a–10(5)(e) (1990) provides that "[a]n interception under this chapter may be conducted in whole or in part by government personnel or by an·individual under contract with the government and acting under supervision of an investigative or law enforcement officer authorized to conduct the interception." Police department employees are government personnel. Accordingly, police department employees may participate in an interception.

## COMPLIANCE WITH WIRETAP ORDER

■ Gallegos claims the trial court improperly refused to suppress the wiretap evidence because the investigating officers "failed to adequately limit the communication intercepted." Gallegos states that through defective minimization techniques such as "spot monitoring," the officers improperly listened periodically to every call, including the calls not relevant to the investigation.

Wiretaps are seizures subject to an "objective reasonableness" standard under the fourth amendment. *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). During the early stages of surveillance, "agents may be forced to intercept all calls to establish categories of nonpertinent calls which will not be intercepted thereafter." *Id.* at 141, 98 S.Ct. at 1725. In some circumstances, it is not unreasonable to intercept almost every call because often "the determination of relevancy cannot be made before the call is completed." *Id.*

As stated above, the wiretap order in this case provided that all monitoring "must be terminated upon discovery that the conversation is not relevant to the provisions of this order." Utah law does not forbid the interception of all irrelevant conversations, but instead instructs the officers to conduct the surveillance in such a manner as to "minimize" the interception of such conversations. Utah Code Ann. § 77–23a–10(5)(c) (1990).

Gallegos supplies no argument or legal authority supporting his claim that "spot monitoring" is an invalid minimization technique. Further, he fails to specify any conversation recorded in contravention of the order. One officer, Lieutenant Teuscher, testified that he commenced the wiretap by listening to most of the calls, but that later, officers would "spot monitor" by going off line for two or three minutes at a time when they determined a call to be "clean." Given the facts that Gallegos failed to identify any conversations monitored in violation of any minimization requirements and the State offered evidence that the officers minimized their monitoring, the trial court properly held the interception complied with the wiretap order.

## SUFFICIENCY OF EVIDENCE

■ Gallegos asserts the evidence was legally insufficient to convict him of the ten separate felony counts. In order to bring a claim of insufficiency of evidence, an appellant "must marshal the evidence supporting the ... findings and demonstrate how the evidence, including all reasonable inferences drawn therefrom, is insufficient to support the disputed findings." *State v. Peterson*, 841 P.2d 21, 25 (Utah App.1992). Failure to marshal the evidence waives an appellant's right to have his claim of insuf-

ficiency considered on appeal. *State v. Moore*, 802 P.2d 732, 738 (Utah App.1990).

Gallegos has failed to make any attempt to marshal the evidence concerning counts 7, 8, 11, 12, 14, and 15.[2] Thus, we will not consider any allegations of insufficiency concerning these counts. However, Gallegos has marshaled the evidence concerning counts 3, 13, 18, and 19.

 When challenging a jury's verdict, the defendant must show the evidence and its inferences are so "inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *State v. Petree*, 659 P.2d 443, 444 (Utah 1983). "[S]o long as some evidence and reasonable inferences support the jury's findings, [the appellate court] will not disturb them." *Moore*, 802 P.2d at 738; *accord State v. Booker*, 709 P.2d 342, 345 (Utah 1985).

Count 3 alleges that on or about March 24, 1989, Gallegos agreed, consented, offered, or arranged to distribute marijuana. This count was supported by call # 143, during which Gallegos stated that he had been unable to obtain "smoke" for the caller and agreed to check around for "an elbow." Expert testimony identified "smoke" as marijuana and "elbow" as a half-pound of marijuana.

The state introduced calls # 621 and # 639 to prove the charges in count 13, which alleges that on or about April 3, 1989, Gallegos agreed, consented, offered, or arranged to distribute cocaine. The conversation in these two calls was between Gallegos and Dan LeMaster. LeMaster told Gallegos that he had been unsuccessful in obtaining some "white" and then told Gallegos he needed "a little half." Gallegos replied that he knew "where somethin's happen" and the two agreed to meet after lunch. LeMaster testified that "white" referred to cocaine and "a little half" was a half gram of cocaine or marijuana. A later call, call # 639, indicates that LeMaster unsuccessfully attempted to meet Gallegos and that Gallegos told Le-Master that he would probably not be able to get "it" because "they" were watching Gallegos.

Count 18 alleges that on or about April 14, 1989, Gallegos agreed, consented, offered, or arranged to distribute cocaine. This count was supported by the evidence transcribed in call # 1339. Again, LeMaster and Gallegos were the parties to the conversation. Gallegos offered to provide LeMaster with a "gamer." LeMaster testified that "gamer" referred to an eighth of an ounce of cocaine.

The State introduced call # 1502 to prove the charges in count 19, which alleged that on or about April 15, 1989, Gallegos agreed, consented, offered, or arranged to distribute marijuana. Sergio Gonzales and Gallegos were the parties in that conversation. Gallegos offered, at Gonzales' request, to supply Gonzales with a "green paper," and provided Gonzales with his address. Gonzales testified that "green paper" was "pot" or marijuana.

Gallegos claims the above evidence was insufficient to show (1) he arranged or agreed to distribute a controlled substance; (2) he discussed a controlled substance and not a counterfeit substance; and (3) he actually distributed a controlled substance. However, the above evidence and reasonable inferences drawn therefrom support the jury's finding that Gallegos arranged distribution or agreed to distribute a controlled substance.

 Pursuant to Utah Code Ann. § 58-37-8(1)(a)(ii) (Supp.1992), it is unlawful to knowingly and intentionally "agree, consent, or arrange to distribute a controlled or counterfeit substance." While the State concedes Gallegos did not actually distribute a controlled substances in connection with any of these calls, the above statute does not require an actual transfer or distribution. *State v. Clark*, 783 P.2d 68, 69 (Utah App.1989). In fact, any act in furtherance of arranging to distribute a controlled substance is a criminal offense pursuant to the statute. *Peterson*, 841 P.2d at 25 n. 2.

---

**2.** Counts 7, 8, 11, 12, 14, and 15 are all charges of distribution of or arranging to distribute mar-ijuana, in violation of Utah Code Ann. § 58-37-8(1)(a)(ii) (Supp.1992).

The above telephone calls and the accompanying testimony provide sufficient evidence that Gallegos arranged to distribute controlled substances. The evidence and testimony are not so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that Gallegos committed the felonies of which he was convicted. *See Petree*, 659 P.2d at 444. Accordingly, we will not disturb the trial court's dismissal of the motion to dismiss and motion to arrest judgment.

## JURY INSTRUCTIONS AND MOTION FOR MISTRIAL

Gallegos also alleges the jury instructions given by the trial court, as applied by the jury, denied him due process of law because they were "overbroad and vague." He also alleges the trial court improperly denied his motion for mistrial based upon irrelevant, unfairly prejudicial testimony concerning defendant's prior arrests. We find these arguments to be without merit.

## CONCLUSION

We hold the trial court (1) correctly determined the Utah Act allows a deputy county attorney to authorize an application for a wiretap order; (2) correctly determined the federal and state acts do not present a conflict in this case; (3) made adequate findings supporting its denial of Gallegos's motion to suppress wiretap evidence; (4) properly determined the wiretap order was lawful; (5) correctly held the interception of Gallegos's conversations was performed within the scope of the order; (6) did not clearly err in finding Gallegos arranged for the distribution of controlled substances; (7) did not give improper jury instructions; and (8) properly denied Gallegos's motion for mistrial. We also hold that a "substantial compliance" test applies to issues involving orders authorizing interception of communication.

BENCH and GREENWOOD, JJ., concur.