2000 Utah Ct. App 159

**STATE of Utah, Plaintiff and Appellant,**

v.

**Tracy Raymon HESTER, Defendant and Appellee.**

**No. 981857–CA.**

Court of Appeals of Utah.

June 2, 2000.

Jan Graham, Atty. Gen. and Marian Decker, Asst. Atty. Gen., Salt Lake City, for Appellant.

Linda M. Jones, Salt Lake Legal Defender Assoc., Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and ORME.

## OPINION

ORME, Judge:

¶ 1 Appellant, the State of Utah, appeals from a magistrate's order dismissing a charge of arranging to distribute a controlled or counterfeit substance,[1] a second degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1999). We affirm.

## BACKGROUND

¶ 2 On August 19, 1998, Detective Ann Cardon, an undercover agent with the Metro Narcotics Task Force, was in an unmarked car on 100 South and 900 West in Salt Lake City when she made contact with defendant Tracy Raymon Hester. Cardon pulled up to the curb where Hester was standing and said something to Hester, who walked over to the vehicle. Cardon asked Hester if he had any "chiva." [2] Hester replied, "No, baby, I don't[;] only coke." [3] Cardon responded that she wanted some heroin, but if he had any cocaine she had a twenty. Hester took Cardon's twenty dollar bill, told her to "wait there," and walked away.[4]

¶ 3 Hester was arrested by members of the Task Force one block from Cardon's car, still walking away from her. Hester had no cocaine on him at the time of his arrest; he had spoken to no one, nor had he made any phone calls after leaving Cardon; and there was no particular indication that he was going to meet a supplier or otherwise actually procure cocaine or arrange for its delivery to Cardon.

¶ 4 The State charged Hester with one count of arranging to distribute a controlled substance, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1999). A preliminary hearing was held on September 29, 1998. At the conclusion of that hearing, Hester's counsel moved to dismiss on the ground that the State had failed to present evidence sufficient even to support a reasonable inference that Hester actually intended to arrange for the distribution of a controlled substance—as opposed to just stealing Cardon's money. The magistrate granted the defense motion and refused to bind Hester over, but did grant the State leave to file an amended information against Hester for theft by deception. The State declined that invitation and now appeals the dismissal. See State v. Jaeger, 886 P.2d 53, 54–55 (Utah 1994).

## ISSUE AND STANDARD OF REVIEW

¶ 5 The State appeals the magistrate's dismissal of the arranging charge against Hester, arguing that the magistrate erred, as a matter of law, when he failed to recognize that the State's evidence was at least sufficient to permit the reasonable inference that Hester intended to arrange for the distribution of a controlled substance. In so arguing, the State relies on the facts that Hester told the undercover officer that he had cocaine, accepted money from the officer, and told the officer to "wait there." "[T]he ultimate decision of whether to bind a defendant over for trial presents a question of law which we review de novo[,] without defer-

---

1. We use the term "arranging" in this opinion as shorthand for all the variations of culpable behavior listed in the statute, which proscribes "offering, agreeing, consenting or arranging to distribute a controlled or counterfeit substance." Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1999). See, e.g., State v. Harrison, 601 P.2d 922 (Utah 1979); State v. Gallegos, 851 P.2d 1185 (Utah Ct.App.1993).

2. "Chiva" is a common street name for heroin. See Office of National Drug Control Policy, Street Terms: Drugs and the Drug Trade (last modified Jan. 20, 2000) <http://www.whitehousedrugpolicy.gov/drugfact/terms/type_her.html>.

3. "Coke" is a common street name for cocaine. . See Office of National Drug Control Policy, Street Terms: Drugs and the Drug Trade (last modified

Jan. 20, 2000) <http://www.whitehousedrugpolicy.gov/drugfact/terms/type_coc.html>.

4. Thus, the dissenting opinion is wide of the mark in claiming, in ¶ 25, that defendant "discussed the purchase with [the officer], set a price for the [cocaine], and agreed to make the exchange." Defendant did not "discuss" any purchase with the officer—he only said he had "coke." Defendant did not set a price of $20—the officer did. While the State's case would have been stronger had defendant "agreed to make the exchange," he absolutely did not. He took the officer's money and told her to "wait there," but defendant agreed to nothing, least of all to make an "exchange."

ence." *State v. Jaeger*, 896 P.2d 42, 44 (Utah Ct.App.1995).

¶ 6 In undertaking this review, we are mindful that "[p]reliminary hearings are adversarial proceedings in which the prosecution must present sufficient evidence to establish that 'the crime charged has been committed and that the defendant has committed it.'" *State v. Pledger*, 896 P.2d 1226, 1229 (Utah 1995) (quoting Utah R.Crim. P. 7(h)(2)). The "quantum of evidence" necessary does not have "to establish the defendant's guilt beyond a reasonable doubt, but must [be] sufficient to warrant submission of the case to the trier of fact." *State v. Anderson*, 612 P.2d 778, 783 (Utah 1980). The prosecution, at a minimum, must establish "a *prima facie case* against the defendant from which the trier of fact could conclude the defendant was guilty of the offense as charged." *Id.* (emphasis added). The evidence submitted must be "sufficient to survive a motion for directed verdict with respect to each element of the crime." *State v. Talbot*, 972 P.2d 435, 438 (Utah 1998). "Since both a directed verdict and a motion to quash serve gatekeeping functions, it is sensible for them to share a common standard." *Id.*

¶ 7 The magistrate's role in this process, while limited, is not that of a rubber stamp for the prosecution. *See Anderson*, 612 P.2d at 783 ("Although the hearing is not a trial per se, it is not an ex parte proceeding nor one-sided determination of probable cause[.]"). The preliminary hearing is "a gateway to the trier of fact" and the magistrate must ensure that the State has met its burden of establishing the prima facie elements of the crime charged. *Talbot*, 972 P.2d at 438. *See Anderson*, 612 P.2d at 783. The magistrate must view all evidence in the light most favorable to the prosecution and must draw all *reasonable* inferences in favor of the prosecution. *See Pledger*, 896 P.2d at 1229. When faced with conflicting evidence,

the magistrate may not sift or weigh the evidence, or evaluate its credibility, but must leave those tasks "to the fact-finder at trial," *State v. Wells*, 1999 UT 27, ¶ 2, 977 P.2d 1192, so long as the State's evidence, viewed in the light most favorable to the State, establishes a prima facie case. *See Talbot*, 972 P.2d at 438. Even with this limited role, the magistrate must attempt to ensure that all "groundless and improvident prosecutions" are ferreted out no later than the preliminary hearing. *Anderson*, 612 P.2d at 783–84. *See id.* at 784 n. 20 (explaining history of preliminary examinations).

## ANALYSIS

¶ 8 The State argues that the magistrate misapplied both the arranging statute and the bind-over standard when he failed to acknowledge that a fact-finder, hearing its evidence, might well draw the inference that Hester had intended to arrange for the distribution of a controlled substance to the undercover officer.

¶ 9 Hester was charged with "unlawful distribution, offering, agreeing, consenting or arranging to distribute a controlled or counterfeit substance." Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1999). To make out a prima facie case under the statute, the State must show that an offer, agreement, consent, or arrangement to distribute controlled substances was made by the defendant and, whichever variation or variations it charges, that the behavior was "engaged in knowingly or with intent that such distribution would, or would be likely to, occur." [5] *State v. Harrison*, 601 P.2d 922, 923 (Utah 1979). *See also id.* at 924 ("[I]f he intends the distribution for sale of a controlled substance, any act in furtherance of an arrangement therefor constitutes the criminal offense described by the statute.").

---

5. The dissent's suggestion in ¶ 28 that the State's evidence establishes a prima facie case of one of the other variations under the arranging statute, even if it is inadequate to establish a prima facie case of *arranging* to distribute a controlled substance, misses the importance of this intent element. Someone who says, "I could get you a ton of pot," but is only joking, is not guilty of offering to distribute a controlled substance under the statute. Similarly, someone who seems to imply a willingness to arrange a drug transaction, but only intends to pocket the proffered payment and walk off with it, is not guilty under the statute.

¶ 10 To be guilty of arranging, the defendant must have committed some "act in furtherance of an arrangement" to distribute controlled substances. *Id.* at 924. In this case, Hester arguably committed such acts when he told Cardon "[n]o, baby, I don't[,] only coke" and took her money. The primary question is whether the State presented the necessary "quantum of evidence" to show that Hester actually intended to go through with the distribution of the controlled substance. As part of its prima facie case of arranging, the State must prove that the defendant acted with the knowledge or intent that his actions would result in the distribution of a controlled substance. *See id.* at 923. A defendant who offers to sell drugs with no actual intent of following through is not guilty of the offense of arranging. *See People v. Jackson,* 59 Cal.2d 468, 30 Cal.Rptr. 329, 381 P.2d 1, 2 (1963).

¶ 11 Intent to commit a crime can be "inferred from the actions of the defendant or from surrounding circumstances." *State v. Murphy,* 674 P.2d 1220, 1223 (Utah 1983). Proof of an actual sale is not an element of the crime of arranging, but such evidence "may be helpful, or even necessary, in proving knowledge or intent" in certain types of cases. *Harrison,* 601 P.2d at 924 n. 5. *See State v. Renfro,* 735 P.2d 43, 44 (Utah 1987) (defendant discussed purchase price with officers, set price, showed narcotics to officers, and sale was completed in his home); *State v. Scott,* 732 P.2d 117, 118 (Utah 1987) (sale of marijuana occurred at defendant's home and defendant handled negotiations over price of drugs); *State v. Gray,* 717 P.2d 1313, 1315 (Utah 1986) (defendant drove to site where drugs were bought, divided drugs and gave some to buyer, and commented to buyer on quality of drugs). In the cases just cited, the defendant's intent can be inferred from the surrounding circumstances as well as from the fact that a completed transaction occurred.

¶ 12 Even absent proof of a completed distribution, there are other types of evidence which can be used to reveal the defendant's intent by showing that the defendant took active steps to facilitate the completion of an illicit transaction. *See State v. Gallegos,* 851 P.2d 1185, 1187, 1190–91 (Utah Ct. App.1993) (defendant made multiple phone calls agreeing to find and provide various controlled substances to callers and was observed by police at meetings with individuals known to be involved in distribution of controlled substances); *State v. Pelton,* 801 P.2d 184, 185 (Utah Ct.App.1990) (defendant brought together buyer and seller and was knowing and intentional "link in a chain of events" that led to sale of cocaine by another), *cert. denied,* 156 Utah Adv. 26 (Utah 1991); *State v. Clark,* 783 P.2d 68, 68–69 (Utah Ct.App.1989) (defendant attempted to contact drug dealer, commented on quality of drugs, and was present during negotiations for sale of drugs). Even an aborted transaction can serve as the basis for an "arranging" conviction, if the surrounding facts indicate that the defendant had intended to facilitate a completed drug sale. *See People v. May,* 224 Cal.App.2d 436, 36 Cal.Rptr. 715, 717 (1964) (defendant revealed detailed plan to buy drugs in Mexico, introduced officer to drug dealer, and invited officer to smoke marijuana with him); *Francis v. State,* 890 S.W.2d 510, 513 (Tex.Crim.App.1994) (defendant and undercover officers had engaged in prior drug transaction, defendant agreed to "get some" crack cocaine if they would drive him to seller, and defendant acted upon agreed transaction and walked with officers to their car).

¶ 13 The State failed in this case to present the necessary "quantum of evidence" at the preliminary hearing to make a prima facie case of any recognized variant under the arranging statute. The State could have met its burden either by producing evidence of a completed sale of cocaine to Cardon or evidence that Hester took active steps to facilitate the distribution of cocaine, even if the distribution never actually occurred.[6] The State produced neither. It was able to

---

6. Such evidence could include that Hester made phone calls seeking drugs, *see Gallegos,* 851 P.2d at 1190; drove around looking for drugs, *see Clark,* 783 P.2d at 68–69; commented to Cardon on how the drugs were to be acquired, *see May,* 36 Cal.Rptr. at 717; was seen conferring with known drug suppliers, *see Gallegos,* 851 P.2d at 1187; or was shown to be a "link in a chain" of distribution. *Pelton,* 801 P.2d at 185.

present only three facts that it believes suggested Hester's intent to arrange for distribution of cocaine: First, he told Cardon that he had cocaine; second, he accepted Cardon's twenty dollar bill; and third, he told Cardon to "wait there."

¶ 14 Hester's true intentions that evening may never be known. Rather than allowing events to unfold a while longer, the police moved too quickly to apprehend Hester without even knowing if he had any controlled substances on him (he did not), or if any other party was involved in the transaction (none was identified), or if he had some other means to get the cocaine delivered to Cardon (none was shown). On the record before us, trying to discern Hester's intentions at the time of his arrest would be an exercise in pure speculation. Only speculation, ungrounded in the evidence, points to his intention to actually facilitate Cardon's securing cocaine. *Cf. State v. Redd,* 954 P.2d 230, 236 (Utah Ct.App.1998) (affirming dismissal of charges where prosecution failed to present enough evidence at preliminary hearing to permit reasonable inference that unearthed bones were intentionally buried).

 ¶ 15 The State is correct in its assertions that at a preliminary hearing all evidence must be viewed in the light most favorable to the prosecution and that the court must draw all reasonable inferences in the prosecution's favor. *See State v. Pledger,* 896 P.2d 1226, 1229 (Utah 1995). But here, the State failed to provide the magistrate with facts from which a fact-finder could draw a *reasonable* inference—as opposed to a wild guess—of Hester's intent to arrange a drug sale. Instead, the State was really asking the magistrate to give the fact-finder a chance to speculate as to Hester's intent to arrange a drug sale. Such speculation flies in the face of the evidence presented, which establishes a strong case of theft by deception[7]—not one of arranging a drug deal. The magistrate was correct in refusing to bind the case over because the State's evidence would require the fact-finder to speculate as to Hester's intent to arrange a sale.

¶ 16 Our dissenting colleague disagrees. He believes Hester's intent to facilitate a drug transaction can logically be inferred from the thin circumstantial evidence in this case. While it is sometimes subtle, there is in fact a difference between drawing a reasonable inference and merely speculating about possibilities. An inference is "a conclusion reached by considering other facts and deducing a logical consequence from them." *Black's Law Dictionary* 781 (7th ed.1999). Stated another way, "[a]n inference is a deduction as to the existence of a fact which human experience teaches us can reasonably and logically be drawn from proof of other facts." *Manchester v. Dugan,* 247 A.2d 827, 829 (Me.1968). On the other hand, speculation is defined as the "act or practice of theorizing about matters over which there is no certain knowledge." *Black's Law Dictionary* 1407 (7th ed.1999).

¶ 17 In reality, there is no black line between inference and speculation—both are way-stations along a continuum that has absolute certainty at one extreme and complete impossibility at the other. "When the correlation between the predicate facts and the conclusion is slight, then the inference is less reasonable, and 'at some point, the link between the facts and the conclusion becomes so tenuous that we call it "speculation." '" *State v. Copas,* 252 Conn. 318, 746 A.2d 761, 782 (2000) (Katz, J. dissenting) (quoting *Goldhirsh Group, Inc. v. Alpert,* 107 F.3d 105, 108 (2nd Cir.1997)).

¶ 18 A recent Utah Supreme Court case points up this important distinction in practice. In *State v. Layman,* 1999 UT 79, 985 P.2d 911, defendant was convicted of a drug possession charge on a constructive possession theory. As in this case, the evidence against defendant was circumstantial. When the woman who actually possessed the drugs was asked by a policeman if he could see the pouch which later revealed the illegal substance, she looked at the defendant and he "shook his head in a negative fashion." *Id.* at ¶ 16. It was of course possible that the defendant did so because he had some ownership interest in the drugs and did not wish

---

7. "A person commits theft if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof." Utah Code Ann. § 76–6–405(1) (1999).

to have them come to the attention of the police.

¶ 19 Indeed, Judge Bench, also dissenting from this court's decision when it decided *Layman* in the first instance, was of the view the conviction should be sustained on the strength of "Layman's incriminating behavior," *State v. Layman,* 953 P.2d 782, 793 (Utah Ct.App.1998) (Bench, J. dissenting), in conjunction with the facts that Layman and his female friend were in his car and that "Layman had 'a lot of methamphetamine' in his system." *Id.* The Supreme Court disagreed. In affirming our reversal of Layman's conviction, the Court concluded that this evidence was legally insufficient to warrant drawing an inference of constructive possession:

> We conclude that the court of appeals properly found the evidence in this case is insufficient. When all the brush is cleared, the critical fact is that there was little evidence to prove that Michael had such control over Gina's person that one could reasonably infer beyond a reasonable doubt that he knowingly and intentionally possessed the drugs and paraphernalia in her pouch. The only fact tending to prove Michael's control over Gina is that she looked at him when the deputy requested to see the pouch and that Michael shook his head in a negative fashion. *This simply is not enough.*

*State v. Layman,* 1999 UT 79, ¶ 16, 985 P.2d 911 (emphasis added).

¶ 20 It is of course possible that the defendant in *Layman* was an owner of the drugs at issue in that case, just as it is possible that defendant Hester intended to facilitate a drug deal rather than to just take the money and run. However, "[a]n inference must be based on probability and not on mere possibilities or on surmise or conjecture." *Manchester,* 247 A.2d at 829. Accordingly, the State failed in this case to " 'present a quantum of evidence sufficient to warrant submission of the case to the trier of fact.' " *State v. Pledger,* 896 P.2d 1226, 1229 (Utah 1995) (quoting *State v. Anderson,* 612 P.2d 778, 783 (Utah 1980)). It follows that the magistrate ably performed his role as a "gatekeeper" in refusing to bind Hester over on the drug charge, while permitting the State to go forward on the theft charge.

## CONCLUSION

¶ 21 We reject the State's claim that the magistrate erred in dismissing the charge of arranging to distribute a controlled substance against Hester. The State failed to present the necessary "quantum of evidence" sufficient to sustain a reasonable inference that Hester had arranged for the sale of cocaine.

¶ 22 Affirmed.

¶ 23 I CONCUR: JAMES Z. DAVIS, Judge.

BENCH, Judge (dissenting):

¶ 24 I respectfully dissent. The majority recognizes that, at a preliminary hearing, "the magistrate should view the evidence in a light most favorable to the prosecution and resolve all inferences in favor of the prosecution." *State v. Pledger,* 896 P.2d 1226, 1229 (Utah 1995). The majority fails, however, to properly apply that standard in this case.

¶ 25 The evidence presented at this preliminary hearing established that defendant told an undercover officer, who had inquired about buying drugs, that defendant had cocaine; the officer handed defendant twenty dollars; and defendant took the money and told the officer to "wait there." That was sufficient to bind defendant over for arranging to distribute a controlled substance because the evidence and reasonable inferences established that defendant had "discussed the purchase with [the officer], set a price for the [cocaine], and agreed to make the exchange." *State v. Renfro,* 735 P.2d 43, 44 (Utah 1987).

¶ 26 The majority argues, however, that it would be an "exercise in pure speculation" to try to determine whether defendant actually intended to deliver cocaine to the officer. The majority may be correct in suggesting that defendant might have intended to steal the officer's money rather than to deliver the cocaine. For purposes of a bindover, however, we do not need to make that determination. Because it was reasonable to infer that

defendant intended to deliver cocaine to the officer, the judge should have bound defendant over for trial. *See Pledger,* 896 P.2d at 1229 (stating that " 'unless the evidence is wholly lacking and incapable of reasonable inference to prove some issue which supports the [prosecution's] claim,' the magistrate should bind the defendant over for trial") (citation omitted; alteration in original).

¶ 27 In citing *State v. Layman,* 1999 UT 79, 985 P.2d 911, the majority implies that the quantum of evidence necessary for a bindover and a conviction is the same. This, of course, is not the law. At a bindover hearing, " ' "[t]he prosecution is not required to introduce enough evidence to establish the defendant's guilt beyond a reasonable doubt, but must [only] present a quantum of evidence sufficient to warrant submission of the case to the trier of fact." ' " *State v. Talbot,* 972 P.2d 435, 437 (Utah 1998) (citations omitted). The applicable standard for a bindover is probable cause. *See id.* "This probable cause standard 'is lower, even, than a preponderance of the evidence standard applicable to civil cases.' " *Id.* (citations omitted).

Here, we certainly have probable cause to believe that defendant intended to facilitate a drug transaction.

¶ 28 In any event, defendant was not charged only with arranging to distribute a controlled substance. The State charged defendant with "unlawful distribution, offering, agreeing, consenting or arranging to distribute a controlled or counterfeit substance," in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1999). For purposes of a bindover, there can be little dispute that the facts sufficiently showed that defendant offered, agreed, or consented to distribute a controlled substance in violation of the statute.

¶ 29 Accordingly, I dissent.